Plaintiff brought this suit to recover disability benefits amounting to $105, plus penalties and attorneys' fees, allegedly due him on a health, accident and life industrial insurance policy which was issued to him by the defendant on July 5th, 1920.
The defendant admits the insurance contract; that it is in full force and that the plaintiff sustained a disability which would ordinarily entitle him to recover the sum demanded. It, however, resists any liability on the ground that plaintiff is indebted to it in the sum of $244.10, representing prior overpayments of disability benefits made by it to plaintiff which resulted from the misstatement by plaintiff of his age at the time he applied for the policy. It therefore contends that, in view of plaintiff's indebtedness to it for a sum in excess of that claimed by him, it is not liable for the amount sued for and, specially pleads, that its indebtedness to him on the policy has been fully compensated by the amount of his obligation to it.
After a trial in the lower court, there was judgment in favor of the defendant and plaintiff's suit was dismissed. He has appealed.
The facts of the case are not seriously disputed and we find them to be as follows: On July 5th, 1920, the defendant insurance company issued to the plaintiff, who is a colored man 70 years of age, an industrial life, health and accident policy wherein it was agreed that, in consideration of a weekly premium of 35¢, the company would pay the assured a weekly benefit of $7, in case of his disability due to sickness or accident, and the sum of $73.50 in the event of his death. The premium of this policy and the benefits payable thereunder were based upon the insured's representation that he was 45 years of age at the time the policy was written. Thereafter, from the date of issuance of the policy until the year 1937, the company paid to the plaintiff in sickness and accident benefits, the sum of $976.50. In the latter part of 1937, the defendant discovered that plaintiff had misstated his age in his application for the policy; that, instead of being 45 years of age, he was 50 years and that, in accordance with a stipulation contained in the policy, the weekly disability benefits based on the premium paid at the correct age of the plaintiff should have been $5.25, instead of $7, and the death benefit $61.25, instead of $73.50. Hence, it appeared that the company had erroneously overpaid the plaintiff the sum of $244.10 in disability benefits, having paid him a total of $976.50, whereas, the weekly benefits payable at his correct age should have amounted to $732.40. Upon discovery of the error, the company contacted the plaintiff and caused him to deliver the policy to it in order that the misstatement of his age might be corrected thereon and credit given to the company for the overpayment of $244.10. Accordingly, on February 11th, 1938, when the company received the policy, it made notations thereon of the fact that plaintiff's age had been misstated and also changed the maximum weekly disability benefits and death benefit due thereunder to the correct amount. In addition, it inserted in the policy the following provision:
"This policy is subject to an indebtedness to the Company in the sum of $244.10 which amount is a lien against the proceeds and face value thereof, representing overpaid relief benefits to the insured due to a misstatement of age on the part of the insured."
With these corrections and insertions, the policy was redelivered to the plaintiff and he thereafter paid all premiums falling due thereunder. On October 9th, 1938, plaintiff became disabled for a period of 20 weeks as a consequence of a fracture of his leg. When he demanded payment of the weekly benefit under the policy, the company took the position that no payments would be due until after plaintiff's indebtedness of $244.10 had been fully liquidated. The refusal of the defendant to accede to plaintiff's request for payment of the total disability benefits of 20 weeks, or $105, provoked this action.
The theory of plaintiff's case is that the indebtedness he owes the defendant, as a consequence of the prior overpayments of disability benefits, cannot be offset against the weekly benefits (now allegedly due) because of the provisions of Act No. 155 of 1934, which exempt the proceeds, avails and dividends of all life, health and accident insurance from all liability for any debt.
The defendant, on the other hand, contends that Act No. 155 of 1934 does not preclude it from insisting that the insurance *Page 131 
proceeds are chargeable with plaintiff's obligation to it for the reason that his indebtedness resulted from an advance payment or payments made by it on account of or against its future liability on the policy and, consequently, comes within one of the specific exceptions contained in the Act. Further, in the alternative, it is maintained that Act No. 155 of 1934 does not have the effect of repealing the articles of the Civil Code respecting the compensation of debts and that, therefore, its liability to plaintiff has been fully compensated through operation of law by the debt which plaintiff owes it, since both are liquidated and equally due and demandable.
The pertinent part of section 2 of Act No. 155 of 1934, which amends and reenacts section 1 of Act No. 189 of 1914 as amended by Act No. 88 of 1916, reads as follows:
"That the following shall be exempt from all liability for any debt:
"(1) The proceeds, avails and dividends of all life, including fraternal and co-operative, health and accident insurance.
* * * * *
"Provided, however, that there shall be excepted from the provisions of this Act a debt secured by a pledge of a policy, any rights under such policy that may have been assigned, and anyadvance payments made on or against such policy." (Italics ours.)
Counsel for the defendant do not contend that the stipulation which was placed in the policy contract on February 11th, 1938 (providing that the policy is subject to an indebtedness to the company in the sum of $244.10 which amount is a lien against the proceeds and face value thereof), is either a pledge or an assignment of the policy. They, however, assert that it falls squarely within the third exception contained in the statute, respecting advance payments, because the provision inserted in the policy is clearly a recognition by the plaintiff not only of his indebtedness to the company but that the company had made advances to him amounting to $244.10 and that this amount would be repaid out of the proceeds or avails of the insurance.
Contra, counsel for plaintiff maintains that the overpayments made by the company cannot be regarded as advance payments on account of its future liability under the policy; that these payments are obviously payments made through error resulting from the plaintiff's misstatement of his age and that, this being so, the avails of the insurance cannot be subjected by the company as an offset against plaintiff's indebtedness to it.
It seems plain to us that the overpayments made by the defendant were not, strictly speaking, "advance payments" for the words "advance payments" used in their ordinary sense mean payments made in anticipation of a contingent or fixed future liability. Here, the payments of the defendant were not, at the time they were made, disbursed in advance of any future liability which might accrue on the policy. They resulted solely from error. Error in the belief that the insured was 45 years of age at the time the policy was written, whereas, in truth and in fact he was 50 years old.
But, notwithstanding that the overpayments were not "advances" at the time they were made, it does not follow that the defendant is not entitled to have them considered as such, in view of the action taken by the parties in order to rectify the error which resulted from the plaintiff's misstatement of his age in his application for the insurance. When the company became cognizant of the fact that plaintiff's age had been misstated and that he had been overpaid as a consequence, plaintiff was obviously faced with the possibility of either repaying the company or being subjected to a lawsuit. Therefore he agreed to liquidate his indebtedness out of the avails of the insurance and a clause was inserted in the policy providing that it was subject to the indebtedness of $244.10 and that the amount would be considered as a lien against the proceeds of the insurance. Of course, the stipulation did not, of itself, have the effect of producing a lien, because privileges are offsprings of the law and cannot be created by contract. See Whittington v. Nelson Bros. Const. Co., La.App., 141 So. 491. However, the stipulation clearly evidences the intention of the parties to subject the proceeds of the insurance to the debt and it binds the plaintiff to pay his obligation out of any proceeds he derives from the insurance. Hence, it is manifest that plaintiff has voluntarily waived the exemption accorded him by Act No. 155 of 1934, even if the overpayments made by the defendant are not to be considered as advances on account of its future liability and do not fall strictly within the *Page 132 
exception contained in the statutory exemption. As we view the statute, there can be no objection to the insured waiving the benefit of the exemption provided by the Legislature. And, while the waiver is not binding on his beneficiary or heirs unless it conforms to the exceptions contained in the statute, it is enforceable as between the immediate parties. The debt owed by the plaintiff representing overpayments made to him on the policy is a just one and plaintiff, aside from his legal obligation to pay it, was evidently of the belief that it was to his advantage to liquidate his obligation out of the proceeds of the policy.
Furthermore, while it is true that, strictly speaking, the overpayments were not "advances" at the time they were made, it seems reasonable to say that the parties intended them to be treated as advances made on account of the defendant's future liability, when they inserted the clause in the policy which subjected the proceeds of the insurance to the payment of the debt. In other words, by inserting the provision that the overpayments were to be liquidated out of the avails of the insurance, the parties indicated that the payments made through error were to be considered as advances on account of the defendant's ultimate liability on the policy.
In addition to this, we entertain considerable doubt that the language of the statute which excepts from the exemption granted to the insured or his beneficiary "any advance payments made on or against such policy" should be interpreted so as to exclude either voluntary payments made by the company or payments made as the result of error. While it is true that such payments are not "advances" in the sense that they are made in anticipation of a future liability, yet they are payments which are made on account of the policy and, as such, should be regarded as advances within the contemplation of the exception contained in the Act. It is to be noted that the language used by the Legislature excepts "any advance payments" which are made "on or against such policy". This language, we think, is broad enough to include a payment made through error, or otherwise, on account of the policy. This view is fortified by that of the Supreme Court in the case of Hulo v. City of New Iberia, 153 La. 284, 95 So. 719, which is cited in Words and Phrases, Perm. Ed., Vol. 2, p. 534, under the heading "Advance payment." In that matter, one of the questions under consideration was whether a voluntary payment made by an employer to an injured employee out of sympathy and benevolence should be taken into account as advance payments of compensation due under the Employers' Liability Act. The court held in the affirmative.
In Schwartz v. Jacobs Bros. Co., 247 App. Div. 848, 286 N.Y.S. 711, decided by the Appellate Division of the Supreme Court of New York, the question involved was whether the payment of full wages to an employee during a period of time when he was absent from work was to be considered as an "advance payment" within the meaning of the New York Workmen's Compensation Law providing that bar of statute for failure to file claim within specified time is waived by "advance payments" to claimant. The court held that it should be considered as an advance payment.
It is apparent that, in the above cited cases, the payments made by the employers to the employees were not advance payments in the sense that they were made on account of a liability accruing in the future. They were payments of gratuities made out of sympathy and benevolence. Yet the courts held that they should be treated as advance payments. In the Louisiana case, it was found that the employer was entitled to a deduction for such payments in computing the compensation due and, in the New York case, the court decided that such payments were advances which interrupted the running of the statute of limitation.
Conformably, in the case at bar, we think that the language used in the exception contained in Act No. 155 of 1934 is sufficiently broad in its scope to permit the consideration of such overpayments as an advance payment on account of the company's ultimate liability on the policy, and particularly so where the parties have, in effect, agreed that they shall be so considered and are to be deducted from any future liability.
In view of the conclusion we have reached, it is unnecessary for us to consider defendant's alternative contention that Act No. 155 of 1934 does not repeal the articles of the Civil Code respecting compensation of debts in so far as insurance proceeds are concerned.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed. *Page 133