328 So.2d 698 (1976)
Robert MUSE
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY et al.
No. 10587.
Court of Appeal of Louisiana, First Circuit.
March 1, 1976.
*700 Robert L. Raborn, Baton Rouge, for La. Health and Human Resources.
Robert L. Kleinpeter, Baton Rouge, for Chas. A. Tyler and Transamerica Ins. Co.
Donald S. Zuber, Baton Rouge, for Chas. A. Tyler, St. Paul Fire & Marine Ins.
Ronald F. Plaisance, New Orleans, for plaintiff-appellee.
Before LANDRY, COVINGTON and PONDER, JJ.
LANDRY, Judge.
Defendants Charles Alvin Tyler and his malpractice insurer Transamerica Insurance Company (Appellants) appeal from judgment in favor of Plaintiff, Robert Muse (Client) for the sum of $1,873.33 as compensation for losses sustained due to Tyler's alleged misrepresentation of Client in the collection and disposition of the proceeds of a health and accident insurance policy. Louisiana Health and Human Resources Administration (LHHRA), made third party defendant by Tyler and Transamerica, appeals from judgment in favor of said third party plaintiffs in the sum of $1,873.33 which the trial court found to have been erroneously paid to LHHRA by Client pursuant to Tyler's advice. We affirm in part and reverse in part.
Client sued Tyler, Transamerica and St. Paul Fire and Marine Insurance Company (St. Paul), as Tyler's insurers, alleging that Tyler negligently advised Client to pay Charity Hospital of New Orleans (Charity) $1,873.33 for medical services rendered Client, which sum Tyler collected from Client's health and accident insurer and which Tyler erroneously believed to be subject to a lien in favor of LHHRA. All defendants third partied LHHRA. St. Paul was dismissed from the action upon a finding that its coverage of Tyler expired before the alleged malpractice occurred, which dismissal has not been appealed by any party.
The facts are largely undisputed and, as between Appellants Tyler and Transamerica and Muse, are almost all stipulated. Although LHHRA did not join in the stipulation, it raises no serious question as to the facts thereby established or shown by the evidence.
On January 8, 1972 Client, whose education extends to the tenth high school grade, was employed by Louisiana Welding and Press Company. On that same date Client was injured in non-work related automobile accident in which he sustained serious personal injury. Client was taken to Charity where he was hospitalized for approximately 8 months for treatment of his said injuries. Client's employer arranged for dual income protection of its employees pursuant to a policy issued by Colonial Life and Accident Insurance Company (Colonial). All premiums payable under the policy were paid by Client. In May 1972 Client retained Tyler to collect the benefits due Client under Colonial's policy. Between May 1972 and January 1973 Tyler collected one or two checks from Colonial as payments of benefits due Client. The record implies that Tyler was paid a percentage of the amounts recovered. On January 16, 1973 Colonial received notice from Ronald L. Faia, Special Counsel for Charity, that Charity was asserting a privilege upon the proceeds of Colonial's policy *701 for medical treatment furnished Client and that Charity also was exercising its right to subrogation to Client's claims under said policy, all as provided for by La.R.S. 9:4752 et seq. and La.R.S. 46:8 et seq. A copy of Faia's letter was sent to Tyler. Thereafter, Colonial made two payments on its policies by checks dated March 14, 1973 and August 16, 1973, for $800 and $1,073.33, respectively, both payable to Client, Tyler and Charity. Upon Tyler's advice, Client agreed to send the checks to Charity in payment on the hospital bill. Accordingly, the checks were endorsed by Client and Tyler and sent to Faia on September 12, 1973. Tyler arranged with Faia to receive, as attorney's fees, 25% of the monies paid Charity in accordance with La.R.S. 9:4752. The record indicates that Tyler was never paid the agreed fee. During late September or October 1973, Client became dissatisfied with Tyler's service, discharged Tyler and engaged present counsel to continue Client's claim for future benefits under Colonial's policy. Client's present counsel concluded that Charity did not have a lien on the proceeds of Colonial's policy because La.R.S. 9:4752 et seq. and La.R.S. 46:8 et seq. apply only to claims against third parties and also because the benefits payable under a disability policy are specifically exempt from lien or claims of creditors pursuant to La.R.S. 22:646. Present counsel so informed Faia, and thereafter, on September 5, 1974, Faia advised present counsel that he no longer believed Charity had a lien on the policy proceeds and that Charity would make no claim to further payment by Colonial.
Client claims reimbursement from Tyler for the sum of $1,873.33 allegedly paid Charity as a result of Tyler's negligence in failing to know and to inform Client that the proceeds of Colonial's policy were not amenable to lien by Charity.
Appellants deny any negligence on Tyler's part and contend further that Client has failed to bear the burden of proof required to show that Tyler's skill and expertise in handling the matter falls below the standard of care exercised by prudent practicing attorneys in the community in similar matters. In this regard we note that Client did not produce any local attorney whomsoever to testify regarding this issue. Appellants additionally claim that Client had a natural obligation to pay for the services rendered by Charity, and that, therefore, pursuant to La.C.C. art. 1759, Client may not recover for payments made on such an obligation even if mistakenly made. Alternatively, Appellants maintain that LHHRA is responsible for the erroneous payments and should respond in judgment to Appellants if Appellants are cast to pay Client.
LHHRA contends: (1) that Client's natural obligation to pay for the services rendered by Charity amply supports the payments even if made in error; (2) that La.R.S. 22:646, which exempts proceeds of health and accident policies from liability for debts of the insured, is unconstitutional insofar as concerns claims by the State; (3) that Client's voluntary acquiescence to the payments bars his recovery; and (4) that the alleged exemption provided by La.R.S. 22:646 has been impliedly repealed by subsequent adoption of La.R.S. 9:4752 et seq. and La.R.S. 46:8 et seq.
In this court LHHRA has filed an exception of no cause or right of action predicated upon its asserted sovereign immunity. It suffices to say, in this regard, that said exception is without merit inasmuch as the doctrine of sovereign immunity no longer obtains in this state, even with respect to a cause of action arising prior to the effective date of La.Const. 1974. Darville v. Associated Indemnity Corporation, La., 323 So.2d 441, 1975; Board of Commissioners of the Port of New Orleans v. Splendour Shipping & Enterprises Company, Inc., La., 273 So.2d 19.
The obligation of an attorney to his client is stated in Ramp v. St. Paul *702 Fire and Marine Insurance Company, 236 La. 774, 269 So.2d 239, 55 ALR(3d) 967, as follows:
"An attorney is obligated to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality. He is not required to exercise perfect judgment in every instance. However, the attorney's license to practice and his contract for employment hold out to the client that he possesses certain minimal skills, knowledge, and abilities. The fact that an attorney's judgment in confecting contracts, handling suits and doing other business may result in litigation is not in and of itself, a breach of a duty to the client. Risk of future litigation is often a necessary element or result of legal advice and legal representation. The very fact of litigation is a result of the disparity of professional judgment of those in the legal profession. However, lawyers are obligated to scrutinize any contract which they advise their clients to execute, and are required to disclose the full import of the instrument and the possible consequences that may arise upon execution of it."
In any given instance, the standard of care owed by an attorney to his client may be established by expert testimony or recognized by the trial court, which is familiar with the standards of practice in its locality, without the assistance of expert testimony. Watkins v. Sheppard, La.App., 278 So.2d 890. There may even be instances wherein a practitioner's conduct is such as to constitute failure to use due care under any reasonable standard, thereby making the use of expert testimony unnecessary to establish a criteria of care. Watkins v. Sheppard, above.
In this case Client produced no expert testimony to establish the standard of care practices by attorneys in Tyler's community, and the trial court did not assign written reasons for its judgment finding Tyler guilty of legal malpractice. We must therefore determine whether this is an instance in which the attorney's action amounted to negligence or actionable lack of expertise under any reasonable standard of care dictated by the circumstances of this case.
We find that a reasonable standard of professional conduct in this instance would have required a study of the statutes on which Charity's claim and lien were based and recognition of any doubt or invalidity as to Charity's claim which might appear from a careful perusal thereof. The pertinent statutes are as follows:
LA.R.S. 46:8
"8. Subrogation to right of action for patient's injuries against employer or third person
Where a patient in any state supported or veterans administration hospital in the state has been injured by the negligence of another person other than his employer, or by an employer in employment falling outside of the provisions of the employer's liability laws, and has a right of action for the recovery of compensatory damages against that person, the board of administrators of the state supported hospitals or the United States in the case of veterans administration hospitals in the state shall be subrogated to the right of action to the extent of reasonable charges for services rendered to the patient, in accordance with like charges in other hospitals of the first class, including physicians' and surgeons' fees."
La.R.S. 9:4752 and 4753
"4752. Privilege on net proceeds collected from third party in favor of hospitals for services and supplies furnished injured persons
A hospital that furnishes services or supplies to any injured person shall have a privilege for the reasonable charges or *703 fees of such hospital on the net amount payable to the injured person, his heirs, or legal representatives, out of the total amount of any recovery or sum had, collected, or to be collected, whether by judgment or by settlement or compromise, from another person on account of such injuries, and on the net amount payable by any insurance company under any contract providing for indemnity or compensation to the injured person. Provided, however, the privilege of an attorney shall have precedence over the privilege created under this section.
"4753. Written notice
The privilege created herein shall become effective if, prior to the payment of insurance proceeds, or to the payment of any judgment, settlement, or compromise on account of injuries, a written notice containing the name and address of the injured person, the date the injury was incurred, the name and location of the interested hospital, and the name of the person alleged to be liable to the injured person on account of the injuries received, shall be mailed by the interested hospital, certified mail, return receipt requested, to the injured person, to his attorney, to the person alleged to be liable to the injured person on account of the injuries sustained, to any insurance carrier which has insured such person against liability, and to any insurance company obligated by contract to pay indemnity or compensation to the injured person. This privilege shall be effective against all persons given notice according to the provisions hereof, and shall not be defeated nor rendered ineffective as against any person that has been given such notice, because of failure to give such notice to all those persons named herein."
La.R.S. 22:646
"646. Exemption of proceeds; health and accident
The proceeds or avails of all contracts of health and accident insurance and of provisions providing benefits on account of the insured's disability which are supplemental to life insurance or annuity contracts heretofore or hereafter effected shall be exempt from all liability for any debt of the insured, and from any debt of the beneficiary existing at the time the proceeds are made available for his use."
Mr. Tyler's testimony does not indicate that he gave consideration to, or was aware of, or studied any of the pertinent statutes. He testified merely that upon receipt of Faia's letter giving notice of the claim and lien, he cooperated with Charity as he had customarily done with state agencies on many prior occasions. We find Tyler professionally remiss in failing to question the validity of Charity's claim to subrogation to Client's rights against Colonial under La.R.S. 46:8, above, because the statute clearly applies only to claims against third party tort feasors and their insurers. However, since Charity did not exercise its alleged right of subrogation, no damage resulted to Client from this oversight.
The validity or invalidity of Charity's claimed privilege under La.R.S. 9:4752 is not so clear and unambiguous. On its face, this statute applies to any "net amount payable by any insurance company under any contract providing for indemnity or compensation to the injured person," indicating inclusion of income protection insurance similar to that involved herein. On the other hand, La.R.S. 22:646 is in direct contradiction of La.R.S. 9:4752, in that the former provides in unmistakably clear language that the proceeds of policies of the nature issued by Colonial are exempt from liability for any debt of the insured existing at the time the policy proceeds are made available for his use. We are unaware of jurisprudence touching upon this apparent statutory conflict.
*704 We believe that as a general rule, an attorney must be accorded considerable latitude in the exercise of his professional judgment and evaluation of legal issues which are not specifically resolved by legislation or jurisprudence. In such instances, an attorney may not be held liable for malpractice so long as his determination of such a question, whether ultimately proved right or wrong, is based upon reasonable consideration of applicable legal rules and principles. In short, an attorney does not generally guarantee the correct solution of an ambiguous or unsettled legal issue, just as a doctor does not generally guarantee a cure. The attorney, however, owes his client the duty of diligent investigation and research of the basis of any claim against his client and the utilization of all that such investigation and research should disclose. We find in this instance that diligent investigation and research should have disclosed to a reasonably prudent attorney the existence of La.R.S. 22:646 and raised doubts sufficient to cause such an attorney to question Client's liability to Charity.
It is clear that the attorney did not discharge his duty in this instance. It is not shown that Tyler ever considered any aspect of the issue other than to rely upon Faia's letter asserting the lien and counsel's own personal policy of cooperating with public agencies in matters of this nature. In so doing, Tyler negligently breached his duty to Client by failing to recognize the possible invalidity of Charity's claim and to so advise Client and in failing to inform Charity of a potential defense.
As in any tort action, Client must establish causation between the duty breached and the alleged loss. In this instance, Client must show either that had its claim been resisted, Charity would have abandoned the claim or that a court of law would have found the claim invalid. Vessel v. St. Paul Fire & Marine Insurance Co., La.App., 276 So.2d 874; Toomer v. Breaux, La.App., 146 So.2d 723. We find the required causation established herein. When Client's present counsel directed Faia's attention to La.R.S. 22:646, Faia wrote Colonial and Client's present counsel on September 5, 1974, acknowledging that Charity had no lien on the proceeds of disability income insurance and advising that Charity would make no claims to further payments due Client.
We pretermit consideration of Charity's claim of unconstitutionality of La.R.S. 22:646 because the validity of the statute, per se, is not required to be decided under the circumstances. Since the record shows that Charity was not at that time claiming a privilege on the proceeds of disability policies, whether it had a valid claim or not, there is no reason to determine whether such a claim was valid or invalid.
We find no merit in the argument of Tyler and Transamerica that Client is barred from recovery against Tyler because the money was paid to Charity pursuant to Client's natural obligation to pay for the hospital services rendered. The answer to this position is simply that Client does not seek recovery herein from Charity, but only from Tyler and Transamerica, whose liability is predicated upon Tyler's negligence. Tyler and Transamerica base their claim of recovery from LHHRA on the ground that one should not enrich himself at the expense of another. Conversely, LHHRA contends that Client was under a natural obligation to pay and therefore may not now recover even if payment was by mistake.
A natural obligation, as defined in La.C.C. articles 1756 and 1757, is one which cannot be enforced by legal action, but which is nevertheless binding on the party who makes it, in conscience and according to natural justice. The above definition is expanded by La.C.C. article 1758, as follows:
"Art. 1758. Natural obligations are of four kinds:
1. Such obligations as the law has rendered invalid for the want of certain *705 forms or for some reason of general policy, but which are not in themselves immoral or unjust.
2. Such as are made by persons having the discretion necessary to enable them to contract, but who are yet rendered incapable of doing so by some provision of law.
3. When the action is barred by prescription, a natural obligation still subsists, although the civil obligation is extinguished.
4. There is also a natural obligation on those who inherit an estate, either under a will or by legal inheritance, to execute the donations or other dispositions which the former owner had made, but which are defective for want of form only."
Although our jurisprudence exhibits some uncertainty regarding whether the listing in article 1758, above, is exclusive or illustrative, we find the authorities establish that the examples therein included are in fact illustrative. Notwithstanding Succession of Miller v. Manhattan Life Ins. Co., 110 La. 652, 34 So. 723 (1903), which held article 1758, above, exclusive, numerous subsequent decisions have found other obligations to be natural obligations although they do not fit within either of the four categories in said article. See, for example, Foster & Glassell Co. v. Harrison, 168 La. 500, 122 So. 595, a son being held to pay an unenforceable debt against his parent's estate; Interstate Trust & Banking Co. v. Irwin, 138 La. 325, 70 So. 313, a bank director held liable on a note given to prevent impairment of bank stock, and Mortgage Investment v. Natal, 181 La. 651, 160 So. 128, an endorser held liable despite a release of his obligation resulting from an extension granted the principal obligor. See also comments on the question and authorities therein cited, Martin, Natural Obligations, 15 Tulane L.R. 497; Comment, Natural Obligations, 12 La.L.R. 79; 17 Tulane L.R. 310.
Under general contract law, an individual unquestionably is obligated to pay the fair cost of medical services rendered to him by a hospital, either private or state supported. However, our legislature has established the policy that this obligation is not to be enforced against indigents receiving medical service in a state supported hospital. See La.R.S. 46:1 et seq. Nevertheless, an obligation to pay exists, albeit unenforceable, against the indigent, as is evidenced by statutory provision permitting enforcement against non-indigents and third parties liable to the indigent in either contract or tort. La.R.S. 46:6-11; La.R.S. 9:4751-4755.
We believe the unenforceable obligation of an indigent to pay for such services falls squarely within the definition of natural obligations contained in articles 1757 and 1758, above. The instant case may be analogized to Campbell v. Parker, La.App., 209 So.2d 337, which held a prescribed hospital debt sufficient consideration to support a note given a finance company assignee of the original debt. We also note that in Factors and Traders' Ins. Co. v. City of New Orleans, 25 La.Ann. 454; Campbell v. City of New Orleans, 12 La.Ann. 34 and Cook v. City of Shreveport, La.App., 144 So. 145, payment of a void municipal tax or lien was held unrecoverable because it was supported by the payor's natural obligation to share the cost of municipal operation.
La.C.C. article 1759 states in clear terms that no action will lie to recover what has been paid or given in compliance with a natural obligation. While La.C.C. article 2302 provides that he who pays through mistake, believing himself to be a debtor, may reclaim what he has paid, La.C.C. article *706 2303 conditions such right of recovery on the absence of a civil or natural obligation to pay.
We conclude that Client could not recover payments to Charity, even those made mistakenly. In this regard we note Michiels v. Succession of Gladden, 190 La. 917, 183 So. 217, which held that an insured waived the exception provided by La.R.S. 22:646 by a testamentary declaration that his debts be paid, and Smith v. Unity Industrial Life Ins. Co., La.App., 13 So.2d 129, which decreed a similar waiver where the insured agreed that future benefits be applied to his obligation to the insurer for unpaid, past due premiums.
However, Client's right to recover from Tyler is not predicated upon a mistaken payment. Client has not paid Tyler anything whatsoever, neither does Client owe Tyler any obligation, natural or otherwise. Contrarily, Tyler is obligated to Client for damages caused Client by Tyler's negligence, which in this instance aggregates $1,873.33.
It is ordered, adjudged and decreed that the judgment of the trial court in favor of Robert Muse against Defendants Alvin Tyler and Transamerica Insurance Company in the sum of $1,873.33 be affirmed and that the judgment in favor of third party plaintiffs Alvin Tyler and Transamerica Insurance Company, against third party defendant Louisiana Health and Human Resources Administration, be and the same is hereby reversed and set aside and said third party demands dismissed with prejudice; all costs of these proceedings to be paid by Alvin Tyler and Transamerica Insurance Company.
Affirmed in part, reversed in part, and rendered.