STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CA 0763

MICHAEL BELANGER

VERSUS

SPENCER H. CALAHAN, L.L.C., SPENCER CALAHAN,
JONATHAN D. MAYEAUX, BRADY PATIN, AND
ABC INSURANCE COMPANY

CONSOLIDATED WITH

NO. 2020 CA 0764

MICHAEL BELANGER

VERSUS

SPENCER H. CALAHAN, L.L.C., SPENCER CALAHAN,
JONATHAN D. MAYEAUX, BRADY PATIN, AND
ABC INSURANCE COMPANY

Judgment Rendered: **APR 1 6 2021**

* * * * *

On Appeal from the
19th Judicial District Court
Parish of East Baton Rouge, State of Louisiana
Trial Court No. 644691

The Honorable Janice G. Clark, Judge Presiding

* * * * *

| | |
|---|---|
| Christopher L. Whittington<br>Baton Rouge, Louisiana<br><br>Collin J. LeBlanc<br>Baton Rouge, Louisiana | Attorneys for Defendants-Appellees,<br>Spencer H. Calahan, L.L.C.,<br>Spencer Calahan, and Brady Patin |

John W. Redmann
Edward L. Moreno
Travis J. Causey, Jr.
Gretna, Louisiana

Attorneys for Plaintiff-Appellant,
Michael Belanger

\* \* \* \* \*

BEFORE:  THERIOT, WOLFE, AND HESTER, JJ.

**WOLFE, J.**

In these consolidated appeals, Michael Belanger challenges two judgments rendered by the trial court after a bench trial in December 2019. The first judgment concludes that attorneys, Spencer H. Calahan and Brady K. Patin, along with the Spencer H. Calahan, L.L.C. law firm, did not commit legal malpractice in handling a bad faith claim on behalf of Michael Belanger, and dismisses the malpractice case. The second judgment rendered on the same day as the first, awards attorney's fees to the Calahan law firm on a reconventional demand against Michael Belanger. We affirm both judgments.

## FACTS AND PROCEDURAL HISTORY

This legal malpractice action arises out of the Calahan law firm's handling of litigation that began when Belanger was involved in a motor vehicle accident on December 7, 2007. The other driver, Natalie N. Stephen, was insured by GEICO General Insurance Company. The Calahan law firm filed suit on behalf of Belanger against Stephen and GEICO. Spencer Calahan ("Spencer"), on behalf of Belanger, demanded that GEICO settle the accident claim for its policy limits of $25,000.00. GEICO rejected the demand for its policy limits, and the matter proceeded to a jury trial on April 26, 2011. The jury returned a verdict in favor of Belanger in the amount of $450,000.00, and the trial court signed a judgment in accordance with the jury's verdict. GEICO and Stephen appealed the trial court's judgment to this court, and we affirmed the judgment. The Louisiana Supreme Court denied GEICO's writ application on April 1, 2013, and in May of 2013, GEICO paid its policy limits to Belanger. See **Belanger v. Stephen**, 2012-0278 (La. App. 1st Cir. 11/14/12), 2012 WL 5506648 (unpublished), writ denied, 2012-2679 (La. 4/1/13), 110 So.3d 581.

After all appeal delays had run, Spencer held a meeting with Belanger on April 29, 2013, wherein a settlement distribution sheet was given to and signed by Belanger. On the distribution sheet, $4,200.00 was deducted and retained from the

3

distribution for "Estimated Future Costs." The Calahan law firm earned an attorney fee of $12,284.68 for its work on Belanger's personal injury case. However, because of the large excess judgment, Belanger and Spencer agreed that the Calahan law firm would move forward with a bad faith action against GEICO. There is no dispute that Belanger agreed to have the Calahan law firm continue to represent him in the future bad faith litigation. Approximately five months after the supreme court denied supervisory review of GEICO's appeal, Stephen assigned to Belanger her rights to any bad faith claim against GEICO due to the excess judgment on September 25, 2013.

On October 4, 2013, the Calahan law firm, on behalf of Belanger as assignee of Stephen, filed a petition in the Nineteenth Judicial District Court ("19th JDC") against GEICO, alleging that GEICO had entered into a contract with Stephen and had acted in bad faith resulting in an excess judgment against Stephen. Belanger prayed for reasonable damages together with legal interest, but did not seek attorney's fees or penalties. GEICO removed the bad faith case to the United States District Court for the Middle District of Louisiana and, thereafter, filed a Rule 12(b)(6) motion to dismiss for failure to state a claim or an alternative motion for summary judgment. GEICO argued that the cause of action against an insurer is codified in La. R.S. 22:1973 (renumbered from La. R.S. 22:1220 by 2008 La. Acts, No. 415 § 1, effective January 1, 2009), which is delictual in nature and therefore, subject to the one-year prescriptive period provided in La. Civ. Code art. 3492, rather than the ten-year prescriptive period provided in La. Civ. Code art. 3499. Thus, GEICO asserted that Belanger's bad faith claim had prescribed.

In defense of the motion to dismiss, the Calahan law firm, on behalf of Belanger, argued that the application of the doctrine of *contra non valentem* suspended the prescription period. The Middle District ultimately held that Belanger's bad faith claim against GEICO prescribed one year from the date of the

4

judgment rendered in accordance with the jury verdict, rather than subsequent to the appeals process and writ denial by the Louisiana Supreme Court. Thus, the Middle District found that the bad faith claim prescribed on April 26, 2012, thereby making Belanger's October 4, 2013 petition against GEICO untimely. **Belanger v. GEICO General Ins. Co.**, 2014 WL 7338837, at *5 (M.D. La. Dec. 22, 2014).

Belanger appealed to the United States Court of Appeals for the Fifth Circuit, which clarified that Stephen was legally obligated to pay the excess judgment in 2011, which is when the bad faith claim against GEICO arose. **Belanger v. GEICO General Ins. Co.**, 623 Fed. Appx. 684, 689 (5th Cir. 2015). Additionally, the Fifth Circuit noted that Belanger, as an assignee of Stephen, stood in her shoes, and that Belanger had argued for the first time on appeal that the prescriptive period for a bad faith claim against an insurer by an insured under La. R.S. 22:1973 was subject to a ten-year prescriptive period for contractual actions rather than the one-year prescriptive period for delictual actions. The Fifth Circuit found that Belanger had waived his right to advance the ten-year prescription argument, and affirmed the decision of the Middle District. **Id.** The Fifth Circuit was of the opinion that Belanger's counsel, the Calahan law firm, made a conscious decision not to raise the ten-year prescriptive period at the Middle District level. **Id.** at 691.

Belanger filed this legal malpractice action against the Calahan law firm in the 19th JDC, claiming that by not raising the ten-year prescription argument in opposition to GEICO's federal court motion to dismiss, Belanger was forever precluded from collecting the excess judgment due to the Calahan law firm's negligence. In its defense, the Calahan law firm presented the testimony of an expert on the standard of care required of lawyers, and argued that the prescriptive period at issue was an unsettled area of the law at the time that GEICO moved to dismiss Belanger's bad faith claim. Additionally, the Calahan law firm reconvened against Belanger, seeking reasonable attorney's fees and expenses for representing Belanger

5

in the separate bad faith action against GEICO. After a summary judgment was rendered in favor of the Calahan law firm, and then was reversed by this court on October 25, 2018, Belanger's malpractice claim proceeded to a bench trial in December 2019. See **Belanger v. Spencer H. Calahan, L.L.C.**, 2018-0111 (La. App. 1st Cir. 10/25/18), 2018 WL 5307712 (unpublished), writ denied, 2018-1887 (La. 1/18/19), 262 So.3d 898.

The trial court ultimately ruled in favor of the Calahan law firm, dismissing Belanger's legal malpractice claim in one judgment and, in a separate judgment awarding the Calahan law firm $15,000.00 for attorney's fees, less a credit in the amount of $1,642.27 for earned fees (the balance left in the retained funds), and costs. The trial court signed both judgments on January 10, 2020. Belanger devolutively appealed from the judgment on the merits of the malpractice action and suspensively appealed from the judgment on the reconventional demand. After the appeals were lodged in this court, the Calahan law firm moved to consolidate the appeals since both judgments arose out of the same litigation and bench trial. This court granted the motion to consolidate in an order signed on February 3, 2021.

**APPEAL ON THE MERITS OF LEGAL MALPRACTICE CLAIM**

Belanger assigns error to the trial court's conclusion that the Calahan law firm was not liable for legal malpractice, in receiving expert testimony on the standard of care, and in concluding that the Calahan law firm did not cause Belanger any loss or damages. To establish a claim for legal malpractice, Belanger's burden of proof includes showing: (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence. See **MB Industries, LLC v. CNA Insurance Company**, 2011-0303 (La. 10/25/11), 74 So.3d 1173, 1184; **Teague v. St. Paul Fire & Marine Insurance Company**, 2007-1384 (La. 2/1/08), 974 So.2d 1266, 1272. The attorney-client relationship is undisputed; however, the Calahan law firm vehemently denies that they negligently

represented Belanger or that their representation of Belanger caused him damages. The Calahan law firm also argues that Belanger would not have been successful on the bad faith claim even if it had not been dismissed, but we note that the Louisiana Supreme Court recently held that collectability is not an element of a legal malpractice claim or a valid defense in a legal malpractice lawsuit. See **Ewing v. Westport Ins. Corp.**, 2020-00339 (La. 11/19/20), ___ So.3d ___, ___, 2020 WL 6789490, *5.

An attorney is not required to exercise perfect judgment in every instance. **Ramp v. St. Paul Fire and Marine Ins. Co.**, 263 La. 774, 269 So.2d 239, 244 (1972). The plaintiff must prove the attorney failed to "exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality." **MB Industries, LLC**, 74 So.3d at 1184, quoting, **Ramp**, 269 So.2d at 244. The Louisiana Supreme Court has held that expert testimony must be introduced in legal malpractice cases to establish the applicable standard of care, *except* in those rare cases where the malpractice is so egregious that a lay person could infer the attorney's actions fell below any reasonable standard of care. See **MB Industries, LLC**, 74 So.3d at 1185. Further, in determining whether an attorney has committed malpractice, the court must look at the conditions existing at the time of the alleged malpractice. **Leonard v. Reeves**, 2011-2009 (La. App. 1st Cir. 1/12/12), 82 So.3d 1250, 1262. In situations where legal issues are not definitely resolved by legislation or jurisprudence, an attorney may not be held liable for malpractice as long as his determination of the question, whether ultimately proved right or wrong, is based upon reasonable consideration of applicable legal rules or principles. **Muse v. St. Paul Fire & Marine Ins. Co.**, 328 So.2d 698, 704 (La. App. 1st Cir. 1976).

As for the trial court's factual conclusions that the Calahan law firm did not commit legal malpractice, it is well settled that a court of appeal may not set aside a

7

trial court's finding of fact in the absence of manifest error. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). Additionally, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. **Id.** The manifest error test dictates that a reviewing court must do more than simply review the record for some evidence that may controvert the trial court ruling. Rather, it requires a review of the entire record to determine whether manifest error has occurred. Thus, the issue before the court of appeal is not whether the trial court's conclusion was right or wrong, but whether the conclusion was a reasonable one. **Clay v. Our Lady of Lourdes Regional Medical Center, Inc.**, 2011-1797 (La. 5/8/12), 93 So.3d 536, 543.

Moreover, the appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. **Pinsonneault v. Merchants & Farmers Bank & Trust Co.**, 2001-2217 (La. 4/3/02), 816 So.2d 270, 279. Where the trial court's factual determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. This rule applies equally to the evaluation and resolution of conflicts in expert testimony. **Bellard v. American Central Ins. Co.**, 2007-1335 (La. 4/18/08), 980 So.2d 654, 672. Considering these principles, we now turn to a review of the record. Specifically, we will look at the expert legal testimony to determine whether the Calahan law firm's handling of the bad faith claim on behalf of Belanger was within the appropriate standard of care.

Dane Ciolino was tendered by the Calahan law firm, and accepted by the trial court over Belanger's objection, as an expert in the standard of care and conduct of Louisiana lawyers, legal ethics, and professional responsibility. Pursuant to the requirement for expert testimony in legal malpractice matters as discussed in **MB Industries, LLC**, 74 So.3d at 1185, we find no abuse of discretion in the trial court's

8

ruling on allowing the expert testimony in this case. Ciolino testified that the appropriate standard of care requires lawyers to competently and diligently research all issues and legal standards, discover relevant facts, and exercise judgment as to what non-frivolous arguments to make on behalf of their clients. Ciolino stated that if the issues involve an unsettled area of the law, the lawyer must decide how to rank the order of the issues and, if it is unsettled, it is not necessarily frivolous to raise an issue. Ciolino clarified that the standard of care, however, does not require perfection. The standard is reasonable competence and diligence. Ciolino acknowledged that sometimes mistakes happen, but in his expert opinion the Calahan law firm did not breach the standard of care by not raising the ten-year prescriptive argument at the Middle District level.

Ciolino further explained that the standard of care in a non-obvious legal malpractice claim requires an expert's opinion in order to prevail. He testified that this case is not about an obvious missed prescriptive period. This case required the lawyers at the Calahan law firm to research and exercise their judgment. The lawyers for the Calahan law firm testified that they researched the law and were aware of the ten-year prescription argument, but they chose not to use that argument since the law was unsettled at that time. They chose to argue *contra non valentum* and suspension of the one-year prescriptive period while the underlying case was on appeal, which the Calahan law firm felt was their strongest argument, and in Ciolini's expert opinion was not a frivolous choice.

Five years after the Calahan law firm chose to argue *contra non valentum* to suspend the one-year prescriptive period in an attempt to salvage Belanger's bad faith claim against GEICO, the Louisiana Supreme Court settled the issue of law in **Smith v. Citadel Ins. Co.**, 2019-00052 (La. 10/22/19), 285 So.3d 1062, 1069. The **Smith** court held that the insurer's bad faith is a breach of its contractual obligation and fiduciary duty and thus, the insured's cause of action is personal and subject to

9

a ten-year prescriptive period. **Id.** The supreme court discussed the split in the state appellate circuit courts and in the Louisiana federal courts, noting the various decisions holding conflicting views as to whether the appropriate prescriptive period was one year or ten years. **Id.** at 1070-1073. However, Ciolini testified that what the courts ruled in 2019, after the lawyers for the Calahan law firm made their decision to argue suspension through the doctrine of *contra non valentum*, is irrelevant because their decision and conduct must be evaluated at the time they made their argument in 2014. Ciolini further stated that just because a lawyer loses a case does not mean he has breached the standard of care, concluding that a choice between two non-frivolous arguments is not a breach in the standard of care.

A thorough review of the record and the law at the time that the Calahan law firm was making decisions for Belanger's bad faith claim against GEICO demonstrates that the trial court came to a reasonable conclusion that the Calahan law firm did not breach the appropriate standard of care. The Calahan law firm was faced with unsettled law and differing options on how to handle GEICO's motion to dismiss. We find that the trial court's decision to accept the opinion of the legal expert that there was no malpractice in the Calahan law firm's decision is not manifestly erroneous. Since there was no legal malpractice, there is no loss to Belanger connected to the Calahan law firm's actions and/or inactions. Therefore, we find no merit to any of Belanger's assignments of error regarding the legal malpractice appeal.

## APPEAL OF THE RECONVENTIONAL DEMAND

In this consolidated appeal of the judgment awarding attorney's fees to the Calahan law firm on their reconventional demand, Belanger asserts that the trial court erred in awarding attorney's fees because there was no meeting of the minds establishing a contract for attorney's fees in the bad faith litigation. He also argues that an award of attorney's fees in this situation contravenes the Rules of

10

Professional Conduct. Additionally, Belanger maintains that the trial court abused its discretion in assessing him with costs of the malpractice action.[1] Conversely, the Calahan law firm maintains that they had an oral contract to represent Belanger in the bad faith litigation and they are entitled to collect attorney's fees pursuant to the doctrine of *quantum meruit*, which Belanger denies.

It is undisputed that Belanger and the Calahan law firm had a written contingency fee contract of employment related to Belanger's underlying personal injury lawsuit. After the excess judgment was awarded by the jury, all of the appeal delays were completed, and GEICO paid its policy limits, Belanger attended a settlement disbursement meeting on April 29, 2013, at the Calahan law firm. Belanger signed a disbursement sheet that indicated $4,200.00 was retained for "Estimated Future Costs." Belanger contends that he believed the Calahan law firm would continue to represent him pursuant to the contingency fee contract, taking a portion of any recovery on his behalf. Belanger insists that there was no discussion about payment for future hourly attorney's fees or costs.

During the time that the bad faith litigation was pending, the Calahan law firm never sent Belanger an invoice. Spencer testified that he and Belanger were friends and he told Belanger at the settlement disbursement meeting that they would work out the attorney's fees for the bad faith litigation at a later date. Gina Calahan, an employee of the Calahan law firm, testified that she attended the settlement disbursement meeting, and heard the discussion between her husband, Spencer, and her friend, Belanger. Gina stated that Spencer explained that the $4,200.00 retainer would get them started and the bad faith claim could take a long time to resolve. She testified that Belanger did not seem confused about the agreement to move forward

---

[1] We find that Belanger's remaining assignment of error regarding the award of attorney's fees being extinguished by confusion is moot given our ruling on the merits of the legal malpractice appeal. The extinguishment by confusion argument would only be applicable if this court had reversed the trial court's judgment in the malpractice action.

with the bad faith claim. Spencer acknowledged that he did not discuss an hourly rate with Belanger, but he told Belanger that he would be fair with him. He testified that he and Belanger had a conversation about the $4,200.00 retainer for estimated future costs. Spencer stated that there was no contingency fee contract for the bad faith case against GEICO and that the initial contingency fee contract only covered the Calahan law firm's representation of Belanger in his personal injury lawsuit.

Spencer further testified that all that was left of the retainer at the end of the bad faith case, was $1,642.27, which was not representative of the amount of actual time spent working on the case. Spencer indicated that he had personally logged close to 50 hours, at $340.00 per hour, working on the bad faith case. Spencer acknowledged that he could have been more clear about the hourly fees, but he had a "handshake deal" with his friend, Belanger, about being "fair with him" when settling up at the end of the bad-faith case. The other attorney from the Calahan law firm, Brady Patin, stated that the bad faith claim was a new and separate case from the personal injury case, but he was not involved in the attorney's fees and costs discussion. Patin testified that he was assigned to work on Belanger's bad faith case against GEICO and he spent approximately 175-200 hours on the case. Patin stated that he typically charges $275.00 per hour for his legal services.

When claiming the existence of an oral contract for the payment of money above $500.00 in value, the party must prove the existence and terms of the contract by at least one credible witness and other corroborating circumstances. La. Civ. Code art. 1846; **Seale & Ross, P.L.C. v. Holder**, 2019-1487 (La. App. 1st Cir. 8/3/20), ___ So.3d ___, ___, 2020 WL 4435439, *3. To prove the existence of an oral contract, a party in the litigation may serve as his own witness in fulfilling the requirements of La. Civ. Code art. 1846. **Id.** The party may offer his own testimony in support of his claim of an oral contract; however, the other circumstances that corroborate the claim must come from a source other than that party. The other

12

corroborating circumstances need only be general in nature and independent proof of every detail of the agreement is not required. **Id.**

The existence or non-existence of an oral contract is a question of fact. **Read v. Willwoods Community**, 2014-1475 (La. 3/17/15), 165 So.3d 883, 888. The trial court's determination of this issue will not be disturbed unless manifestly erroneous. Similarly, the issue of whether there were corroborating circumstances sufficient to establish an oral contract is a question of fact. **Id.** Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. **Rosell**, 549 So.2d at 844. Further, when factual findings are based on determinations regarding witness credibility, the manifest error standard of review demands great deference to the trier of fact. **Seale & Ross, P.L.C.**, ___ So.3d at ___, 2020 WL 4435439 at *4. Additionally, as the trier of fact, the trial court was entitled to accept or reject, in whole or in part, the testimony of any witness. **Id.**

The trial court heard conflicting testimony about what was discussed at the settlement distribution meeting between Spencer and Belanger, and witnessed by Gina. However, we find persuasive the actual settlement distribution sheet that was signed by Belanger and withheld $4,200.00 of his disbursement for "Estimated Future Costs." Gina and Spencer both testified that Spencer told Belanger that they would be fair about the attorney's fees when the bad faith claim was completed. As the trial court was free to accept or reject the testimony of any witness and make credibility determinations, we find no manifest error on the part of the trial court in finding the existence of an oral contract for the Calahan law firm to provide legal services to Belanger for the bad faith claim against GEICO.

13

The next step in our analysis is to review the reasonableness of the $15,000.00, less the credit of $1,642.27,[2] award of attorney's fees in favor of the Calahan law firm. It is well recognized that the Louisiana Supreme Court has full and exclusive authority to regulate all aspects of the practice of law, including the attorney-client relationship. **Whitney Bank v. NOGG, L.L.C.**, 2015-1399 (La. App. 1st Cir. 6/3/16), 194 So.3d 819, 823. Part of any attorney-client relationship is the fee the attorney may charge the client for professional services. **Id.** Unless the attorney-client contract produces an excessive, unearned, or incommensurate fee when measured by the factors in Rule 1.5(a) of the Louisiana State Bar Association Rules of Professional Conduct ("RPC"), the fee charged must be considered reasonable and enforceable. **Id.** at 824.

The Louisiana Supreme Court has set forth ten factors to be considered in determining the reasonableness of attorney's fees: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. **Whitney Bank**, 194 So.3d at 824 (citing RPC Rule 1.5(a)). The trial court has much discretion in fixing an award of attorney's fees. The trial court's award will not be modified on appeal absent a showing of an abuse of discretion. **Whitney Bank**, 194 So.3d at 824.

The record contains exhibits of the Calahan law firm's case notes that summarize client communications, travel and preparation time for oral arguments at federal court, and a summary of 175 to 200 hours of work on the file by Patin.

---

[2] The Calahan law firm "Customer Balance Detail" for the Belanger file shows that $4,200.00 was held in trust for expenses and fees in April 2013. A total of $2,557.73 was spent on litigation expenses from 2013 through 2015, leaving $1,642.27 for "Earned Fees."

Spencer, who had nineteen years of experience at the time of trial, and Patin, who had fifteen years of experience at the time of trial, testified about the extensive work they each did on Belanger's bad faith case. While Patin did the bulk of the deposition and research work on the bad faith case, there were several conferences with Spencer regarding strategy and status reviews, as well as updates given to Belanger, although Belanger disputes the communications. Patin testified that he had roughly $55,000.00 worth of legal services performed in the bad faith case and Spencer testified that he had about 50 hours at $340.00 per hour (approximately $17,000.00) for legal services performed in the bad faith case.

The trial court awarded the Calahan law firm $15,000.00, less a credit of $1,642.27 already paid through retained fees, for attorney's fees based on an oral contract. Given that the Calahan law firm's accounting of the hours expended were not outlined in detail to substantiate the number of hours spent on Belanger's bad faith case, we cannot say that the trial court's award was an abuse of discretion. The Calahan law firm researched, wrote briefs, and argued in federal court over a two-year period. The outcome was not favorable to Belanger, but the Calahan law firm earned attorney's fees in their representation of Belanger. We note that Belanger does not dispute that the Calahan law firm performed the legal services and he agreed to pursue the bad faith case. Belanger was told that the process would be long. Belanger discharged the Calahan firm after the bad faith case was concluded, and he sought the services of another law firm for the legal malpractice action.

Under the doctrine of *quantum meruit*, a person can, by his action and acceptance of benefits of another's labor, obligate himself to pay reasonable value of the other's labor. See **Ricky's Diesel Service, Inc. v. Pinell**, 2004-0202 (La. App. 1st Cir. 2/11/05), 906 So.2d 536, 540. Unless discharged for cause, which is not at issue in this case, an attorney is entitled to be reimbursed for his services on a *quantum meruit* basis, regardless of whether the attorney was initially retained under

15

a contingency, set fee, or hourly retainer. **Delta Land & Investments, LLC v. Hunter Estates, Inc.,** 51,069 (La. App. 2d Cir. 1/11/17), 211 So.3d 1255, 1262. A reasonable attorney's fee is determined by the facts of an individual case. The trial court determines the amount of an attorney fee based upon the court's own knowledge, the evidence, and the court's observation of the case and the record. **Id.** at 1263. The trial court listened to the witnesses and made credibility calls about the evidence that was presented. There is no indication of manifest error in the trial court's credibility determinations or weighing of the evidence. The record supports the trial court's award of attorney's fees, which we find to be reasonable under the circumstances. Therefore, we conclude the trial court did not abuse its great discretion in the award of attorney's fees.

Finally, we find no abuse of discretion in the trial court's assessment of costs against Belanger. Pursuant to La. Code Civ. P. art. 1920, the trial court may render judgment for costs against any party as it may consider equitable, and its assessment of costs may only be reversed by the appellate court upon a showing of abuse of the trial court's sound discretion. See **Succession of Dean,** 2017-0155 (La. App. 1st Cir. 3/29/18), 247 So.3d 746, 764, writ denied, 2018-00679 (La. 9/14/18), 252 So.3d 479. The trial court denied Belanger's claim of legal malpractice and found in favor of the Calahan law firm on its reconventional demand. Under these circumstances, the trial court did not abuse its discretion by casting Belanger with all costs.

## CONCLUSION

For the reasons assigned, we affirm both judgments appealed, 2020 CA 0763 and 2020 CA 0764, in all respects. All costs of these consolidated appeals are assessed against Plaintiff-Appellant, Michael Belanger.

**APPEAL 2020 CA 0763 AFFIRMED; APPEAL 2020 CA 0764 AFFIRMED.**

16