SARTAIN, Judge.
Plaintiffs, a partnership composed of Charles B. W. Palmer and Robert E. Palmer engaged in the practice of law in the Parish of Tangipahoa, instituted this suit alleging an oral contract for legal services rendered to defendant claiming a contingent fee of one-third of a sum allegedly received by defendant. From an adverse judgment in the district court said plaintiffs have taken this appeal.
On June 4, 1956, defendant visited plaintiffs’ law offices and talked to Mr. Robert Palmer for the purpose of obtaining legal advice regarding his rights to a certain 65 acre tract of land which he had inherited from his father and which he subsequently sold to his mother, Mrs. Widas, on or about April 18, 1953 for the recited consideration of $150.00. It was during this initial conversation between defendant and Mr. Robert Palmer that plaintiffs urge that their services were engaged on a contingent fee basis of one-third of any sums received by defendant. Defendant maintains that during this conference he did not engage plaintiffs on any fee basis whatsoever but only requested of plaintiffs that a letter be addressed to his mother relative to defendant’s possible rights to the subject property.
Following the initial conference between defendant and Mr. Robert Palmer on June 4, 1956, plaintiffs on June 23, 1956 addressed the following letter to defendant:
“Dear Mr. Porter:
You were in my office Monday 4th of June to discuss the possibility of regaining some property that was transferred to your mother.
I am of the opinion that this sale can be recinded (sic) because the price of the land exceeds the price paid by far.
*723 If you wish to discuss this further please see me in my office or call me at my home 4621. You have a short period of time in which to bring the action so the sooner you contact me the better chance you have of recovering.
Yours very truly,
Charles B. W. Palmer”
Again on August 31, 1956 plaintiff addressed a second letter to defendant which reads as follows:
“Dear Mr. Porter:
The prescription upon the action of lesion beyond moity (sic), or in other terminology, a sale for less than one-half the value of the property, has not yet run. We shall be glad to bring said action in your behalf. Please contact us concerning the proof of the matter.
Yours very truly,
Charles B. W. Palmer”
There is no testimony in the record that defendant ever answered either of these letters. As a matter of fact the record is rather clear that the only time plaintiffs had any contact whatsoever with defendant was the initial interview on June 4, 1956 and April 19, 1957.
On November 5, 1956 plaintiffs addressed a letter to Mrs. Widas, defendant’s mother, which letter we quote in its entirety, to-wit:
“Dear Mrs. Widas:
Lenoir Porter has contacted me concerning certain property which he has an interest in and which he transferred to you in order to protect the property from any creditors when he obtained a job driving a taxi. Amos Bond and his family are living on the place now.
It is my understanding that no consideration was actually given. At any rate, as you most probably know, if land is sold for less than half of its reasonable value, the deed may be attacked on the basis for lesion beyond moiety.
Mr. Porter is interested in having the property deeded back to him. Please let me hear from you regarding this matter.
Yours very truly,
Robert E. Palmer”
The record reflects that Mrs. Widas never received this letter but that it was intercepted by her daughter and son-in-law, Mr. Robert Spec McClendon.
On November 28, 1956, plaintiffs filed suit in the.21st Judicial District Court on behalf of defendant seeking to rescind the aforementioned sale from defendant to Mrs. Widas on the grounds of lesion beyond moiety. It is conceded that particular authorization for the institution of this suit was not given by defendant. However, plaintiffs state that not having heard from defendant they felt obliged to file this suit for the purpose of interrupting prescription and to prevent Mrs. Widas from transferring the property to a third party which would defeat defendant’s right to rescind the sale on the grounds of lesion. At the time this suit was instituted plaintiffs requested of the Clerk of Court that service of process thereon be withheld pending further notification. The testimony with respect to the reasons for withholding service of process on the suit is not very clear. Mr. McClendon testified that upon his interception of the letter of November 5, 1956 to Mrs. Widas, he contacted plaintiffs and requested that legal action by the defendant against his mother be withheld pending a settlement of their differences between themselves. Plaintiffs admit to the possibility of this discussion.
In the meantime, on December 24, 1956 defendant executed an act of ratification of the previous sale of April 18, 1953 to his mother. This act of ratification shows a recited consideration of $3,000.00 cash and contains the additional provision that Mrs. Fannie Lyle Porter Anderson (Mrs. Widas) with full reservation of her rights under the previous deed desired to and did exercise her option as provided by LSA-CC 2591 *724 and “pays the consideration recited herein and other valuable consideration the receipt whereof is acknowledged by the vendor, Lenoir Porter, as full and adequate consideration for the property and all his claim for lesion or otherwise”. This instrument was recorded on January 30, 1957 in the conveyance records for Tangipahoa Parish. Plaintiffs admit to knowledge of this transaction by notice of the same in the Legal News.
The above mentioned act of ratification was executed by defendant without the aid of or advice from plaintiffs who contend that at the time they made an independent inquiry of defendant’s affairs and concluded that the defendant in fact received no cash consideration and assumed that the act of ratification had for its express purpose the settlement of any dispute between defendant and his mother.
On April 19, 1957 defendant returned to the law offices of plaintiffs and advised them that the matter between defendant and his mother was settled and requested a statement for services rendered. Plaintiffs rendered such a statement to defendant in the amount of $50.00 whereupon defendant made a payment thereon of $10.00.
Plaintiffs further contend that they had assumed that defendant had received no cash consideration from his mother or any other person until the latter part of 1960 when plaintiff, Charles B. W. Palmer was riding in an automobile with Mr. Robert Spec McClendon and the conversation came up whereby the latter stated to Mr. Palmer that he had paid defendant $3,500.00 for defendant’s interest in the property, whereupon Mr. Palmer stated, “Well, that’s good, I’m glad to find that out — that will be a good Christmas bonus for me.” Meaning, of course, that if defendant had received any consideration for his interest in the property, he was indebted to plaintiffs for legal services rendered and particularly under their contingent fee contract of one-third.
The testimony of defendant, taken by deposition, is to the effect that he did not receive any sums from his mother for the act of ratification.
Mr. McClendon testified that the $3,500.00 he had reference to in his statement to Mr. Palmer was for legal expenses and property damage he incurred when his wife subsequently acquired the property.
Plaintiffs in support of their claim that defendant did in fact receive the recited consideration filed in evidence a deed showing that Mrs. Widas conveyed her interest in the same property to her daughter, Mrs. Agnes Anderson McClendon for the recited consideration of $3,000.00 which instrument is dated December 24, 1956 and recorded on January 30, 1957. Plaintiffs further filed in the record an act of sale of the same property by Mrs. Agnes Anderson McClendon and Robert Spec McClendon to Harry D. Joynton, dated November 9, 1957 and filed of record on November 13, 1957, which instrument shows a recited cash consideration of $8,000.00.
Also filed in the record is an act of cash sale from one Berlie B. Lack to the defendant of a tract of land comprising 19J4 acres located in Tangipahoa Parish for the recited cash consideration of $3,500.00, under date of May 31, 1957. Plaintiffs contend that this instrument supports their contention that defendant used the sums received from his mother or Mr. McClendon in the act of ratification to purchase the said 191/2 acres. Defendant testified that he earned this sum.
The trial judge in his written reasons stated, inter alia:
“In the absence of out right fraud this Court knows of no authority to vacate the satisfaction and accord of the fee charge of $50.00. Plaintiff as a legally trained professional man must be held to a high degree of investigation and examination before setting his charge. At no time did plaintiff profess it had asked of defendant what had been the results of the set *725 tlement or if he had realized any cash. At that time the second sale was of record, and could have been readily found by plaintiff on checking the conveyance records and would have given him some basis for fixing his fee.”
The question for determination here as in the trial court is one of fact and that is whether or not plaintiffs and defendant entered into a valid binding contract for the rendition of legal services which had for its consideration a contingent fee of one-third of any sums to be derived by defendant as a result of such services.
The trier of fact who heard the testimony and observed the witnesses concluded that plaintiffs had not established by proper evidence that such a contract was entered into. An examination of the record by us does not disclose that the trial judge committed manifest error in this determination. Accordingly, in the absence of such error his decision against the plaintiffs should stand.
A contract between attorney and client is like any other contract and the person alleging the existence thereof bears the burden of proving the same. Generally, the right of an attorney to remuneration for services is dependent on contract, expressed or implied, and he cannot recover a fee from a party who neither employed him nor authorized another to do so.
Plaintiffs appear to urge that notwithstanding the absence of a contract that they are entitled to recover for services rendered on quantum merit. In support of this contention they offered testimony of two attorneys to the effect that according to the general practice in the area in matters similar to the type above described a fee of one-third of aniy sum received by a client is reasonable and fair compensation for such services.
The record is completely silent as to any evidence that defendant misled, lied to, or perpetrated a fraud on plaintiffs when on April 19, 1957 he requested of plaintiffs a statement for services rendered after he (defendant) had settled his differences with his mother. So on the basis of quantum merit the trial judge was correct when he stated he could find “no authority to vacate .the satisfaction and accord of the fee charge of $50.00”.
It is admitted by all concerned that the defendant, Lenoir Porter, was “not very bright” and under these circumstances it was the responsibility of plaintiffs to clearly set forth to the defendant the terms and conditions of their employment. A perusal of plaintiffs’ letters of June 4 and August 31, 1956 clearly shows that plaintiffs expected defendant to contact them before any further action was to be undertaken.
We can well appreciate the circumstances under which plaintiffs found themselves on or about November 28, 1956 when they had failed to receive any response from either the defendant or defendant’s mother. We can also understand that out of an abundance of caution they felt obliged to file suit on behalf of defendant even though they did not have defendant’s specific authority to do so. However, they rendered a bill for services rendered at a time they had knowledge of the fact that the act of ratification was duly recorded. At the same time the sale from Mrs. Widas to Mrs. McClendon was of record. Further, notwithstanding the fact that the sale from Lack to defendant was recorded on May 31, 1957 plaintiffs contend that it was not until the fall of 1960, some three and one-half years later that they had any reliable information that defendant had received any consideration for the transfer of his interest in the property to his mother.
Accordingly, the judgment of the district court is hereby affirmed. Plaintiffs are to pay the costs of this appeal.
Affirmed.
REID, J., recused.