428 So.2d 829 (1983)
REYNOLDS, NELSON, THERIOT & STAHL
v.
Farrell CHATELAIN.
No. 5-333.
Court of Appeal of Louisiana, Fifth Circuit.
January 10, 1983.
Rehearing Denied April 18, 1983.
*830 Leonard L. Levenson, Levenson & Bonin, New Orleans, for Farrell Chatelain, defendant-appellant.
Donald E. Theriot, Nelson & Theriot, New Orleans, for Reynolds, Nelson, Theriot & Stahl.
Before BOUTALL, KLIEBERT and DUFRESNE, JJ.
BOUTALL, Judge.
This appeal arises from a lawsuit filed against a real estate developer to collect a fee for legal services rendered in connection with a conversion of an apartment project into condominiums. From a judgment in favor of plaintiff law firm of Reynolds, Nelson, Theriot and Stahl, the defendant, Farrell Chatelain has appealed.
Farrell Chatelain was in the process of building a large apartment complex in May, 1979, when he decided that the units would be more marketable as condominiums and consulted Donald E. Theriot, a partner of the plaintiff law firm. On May 7, Theriot sent a three-page letter to Chatelain outlining the legal services to be provided. The first paragraph reads as follows:
"In accordance with our meeting of May 4, 1979, this office under my direction will commence preparation of all documents necessary to convert your present rental properties located on Cleary Avenue, Jefferson Parish, Louisiana, into a condominium development. These documents will include, among other things, a Condominium Declaration, Articles of Incorporation of the Condominium Association, Bylaws of the Condominium Association, Rules and Regulations of the Condominium Association and all offering disclosure material required by the present Louisiana Condominium Act or any amendments thereto."
On the third page Theriot states the fee agreement:
"As we discussed, our fee for the preparation of all Condominium Documentation plus offering materials will run to approximately $3,000. It is agreeable to our firm that this fee be paid $1,000 at such time as the final Condominium Documents are prepared, with the remaining balance payable ratably over the next 6 months."
The documents were completed and delivered and a bill rendered June 26, 1979. Chatelain paid $1,500.00 on account August 22 and the balance later in the year.
Sometime during the summer of 1979, Chatelain called Theriot with a problem in closing the sales of individual units. Chatelain's interim lender, The First National Bank of Commerce in Jefferson Parish, held a three-year construction loan of $1,200,000 that was secured by a mortgage on the apartment property. The bank refused to subordinate its construction loan to the Condominium Declaration and to release the individual units for which Chatelain had purchasers, because the loan was in default and was being reviewed for foreclosure; further, there were other liens and judgments against the property. Chatelain asked Theriot to see the bank officers and attempt to work out the problems with the loan.
Theriot performed services during the summer and fall to meet the bank's requirements for releasing the units, namely closing a new mortgage which was to be insured by Lawyers Title Insurance Company, and amendment of the original condominium documents to comply with the new Louisiana Condominium Act, Acts 1979, No. 682, Section 1, which was enacted in July, to become effective September 7, 1979. The closings took place in November, and the loan at the bank was eventually paid in full from the proceeds. On January 4, 1980, Theriot had his firm bill Chatelain as follows:
"For professional services rendered in connection with workout of loan with National Bank of Commerce in Jefferson Parish, and conversion of property into condominium, including numerous conferences with clients, officers of National Bank of Commerce in Jefferson Parish, Surveys, Inc., Security Homestead Association, Jess Nelson at Lawyer's Title Insurance *831 Company, Joseph Drolla and other attorneys; advice as to necessary inclusion in condominium Building Plans and condominium survey, attendance at closing at Lawyer's Title Insurance Company, legal research re: Subordination of Mortgage Agreement, and various other title problems relative to the Louisiana Condominium Act, correspondence with the foregoing parties; and conferences with attorneys for various homesteads. 111.4 hours."
Including $15.50 in costs, the amount due was $7,813.50 representing an hourly rate of $70.00. When Chatelain had not paid the bill by February 15, 1980, Theriot sent a second bill, revised upward to $11,155.00, calculated at a rate of $100.00 per hour, to be paid in full by February 18. As the bill remained unpaid, Theriot filed suit on February 22, seeking $11,155.00, legal interest from date of judicial demand, attorney's fees of $300.00 and costs. Chatelain's answer alleged extinguishment of the debt by the payment of $3,000.00.
Trial was heard by a judge on September 3, 1981. The court awarded the plaintiff $7,813.50, the amount of the first bill, with legal interest from February 22, 1980, the date of filing the petition, and costs but no attorney's fees.
The issues before the court are: first, whether the services for which Chatelain was billed on January 4,1980 were included in the letter agreement of May 7, 1979; second, if not, whether there was an oral agreement that Chatelain would pay Theriot an hourly fee for representing him in obtaining the bank's release of mortgage and subordination; and third, whether the trial judge's award of $7,813.50 was proper and if so whether interest should run from date of demand or from date of judgment.
Regarding the services to be included in the fee of $3,000, Theriot testified that he agreed only to do the initial documentation to create a condominium on Chatelain's property, nothing more, and certainly no complicated negotiations on a mortgage loan. The defendant's counsel asserts in his brief that his only reason for conversion was to save his real estate project as the loan was in jeopardy. Further, that "... he would not have agreed to pay any fee for the preparation of condominium documents unless there would be an agreement with the bank to accept the condominium conversion as prepared by the plaintiff." He admits, however, that there was a misunderstanding ab initio and accepts Theriot's testimony that he was unaware that the loan was in default or that the property was encumbered by judgments and liens until after Chatelain asked him to contact the bank. Chatelain himself admitted telling Theriot that the bank was treating him "fairly and everything was running along fine." He vigorously denied that the loan was ever in default and said that he and Theriot did not ever discuss a default as there was none. Nevertheless, he testified that he interpreted the paragraph in Theriot's letter regarding fees, quoted above, to mean that if there were problems with the bank, Theriot would handle them as part of the $3,000 fee. As will be discussed later, Theriot insists that he told Chatelain when the problem arose that services in connection with the loan were outside the original agreement and would be billed by the hour. We conclude that it reasonably follows that if the client did not inform the attorney of his motive for converting the property to condominiums, i.e., to prevent foreclosure, he had no basis for believing that the fee included negotiations regarding the loan.
Of the 111.4 hours billed as being outside the written agreement, Theriot estimated that 22 hours were spent in amending the documents to comply with the 1979 act. Defendant contends that the modifications should be included in the $3,000 fee.
The letter of May 7 did provide that "... These documents will include, among other things ... all offering disclosure material required by the present Louisiana Condominium Act or any amendments thereto." (Emphasis supplied) Theriot testified that "amendments thereto" meant any changes that occurred while he was preparing the original documents. Although he was chairman of the Real Estate Section of the *832 Louisiana Bar Association, which drafted the 1979 act, he did not know whether the act would pass. The bill did pass very near the end of the Legislative session and was signed by the Governor on July 17, 1979. Theriot's position is that if Chatelain had been ready to record the declaration prior to the act's effective date, September 7, 1979, i.e., if the loan had not been in default and the bank had agreed to subrogate and release promptly, no amendment of the original documents would have been needed. The existence of these conditions was not known to Theriot and the amendments were made necessary through Chatelain's actions. Accordingly, we conclude these 22 hours to be outside the original agreement.
We now consider whether or not there was an oral contract for Theriot to represent Chatelain in connection with the mortgage loan and charge him an hourly rate. The trial judge, in his reasons for judgment, orally given, stated that he had "... come to the conclusion that there was an agreement between Mr. Chatelain and Mr. Theriot."
Chatelain's position is that the elements of a binding contract were lacking; that there was no consent and no meeting of the minds; hence, no contract. He cites for authority Louisiana Civil Code articles 1819 and 1821. There was no agreement as to what services, if any, were to be performed nor as to the price. He also cites Palmer & Palmer v. Porter, 198 So.2d 721 (La.App. 1st Cir.1967) for the necessity of proof. The plaintiffs alleged the existence of a contingency contract, and the court said, at 725:
"A contract between attorney and client is like any other contract and the person alleging the existence thereof bears the burden of proving the same. Generally, the right of an attorney to remuneration for services is dependent on contract, expressed or implied, and he cannot recover a fee from a party who neither employed him nor authorized another to do so."
The defendant also cites McMorris v. Pepperdene, 292 So.2d 892 (La.App. 1st Cir. 1974) for the principle that consent is a prerequisite to the existence of a contract and must be established by a preponderance of the evidence.
In the case of Deutsch, Kerrigan and Stiles v. Rault, 389 So.2d 1373 (La.App. 4th Cir.1980) the court found consent to an agreement by silence, citing LSA-C.C. art. 1811, which provides:
"The proposition as well as the assent to a contract may be expressed or implied: Express when evinced by words, either written or spoken;
Implied, when it is manifested by actions, even by silence or by inaction, in cases in which they can from circumstances be supposed to mean, or by legal presumption are directed to be considered as evidence of an assent."
Although the result was not favorable to the plaintiff in Schaff v. Landers, 355 So.2d 289 (La.App. 4th Cir.1978) the court said, at 290:
"When one employs a lawyer for professional services and the amount of measure of the lawyer's fees is not expressly agreed upon, there is a contract, including an implied promise to pay the lawyer `the value' of those services within the principle of La.C.C. 1816:
Actions without words, either written or spoken, are presumptive evidence of a contract, when they are done under circumstances that naturally imply a consent to such contract. To receive goods from a merchant without express promise, and to use them, implies a contract to pay the value...."
In several cases dealing with an implied contingency contract the court allowed the attorney to recover on the basis of quantum meruit, when the evidence failed to corroborate the existence of a specific agreement but did show that the attorney had expended time to the benefit of his client. McMorris v. Pepperdene, above; Palmer & Palmer v. Porter, above; Dwyer Lumber Co. v. Murphy Lumber and Supply Co., 126 So.2d 19 (La.App. 1st Cir.1960). Indeed we observe that agreements between attorney and client as to attorney fees are subject to special provisions in the *833 Disciplinary Rules of the Code of Professional Responsibility. LSA-R.S. 37, Chapter 4 addendum, DR2-106. The fee agreed to may not be excessive and is subject to court scrutiny. Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979).
At trial Theriot testified that once he had met with the bank's officers and was apprised of the problem with the loan and that there was a deadline for working it out, he told Chatelain the work-out was beyond the first agreement and he would bill him on an hourly basis. Chatelain admitted Theriot's having made the statement. He first testified that he said nothing in response and then later said he objected to Theriot's running up his bill to educate the other lawyers involved on condominiums. Chatelain also admitted that Theriot resigned one day and he asked him to resume the representation the next day.
Chatelain's complaint that Theriot did not set a dollar amount per hour was admitted by the plaintiff. He testified that his reason for not doing so was that he did not know the extent of service that would be required, and felt that if he billed Chatelain fairly he would be paid. He further testified that the hourly fee is not a set rate but depends on several factors, including the work done, its success, and the time pressure involved. He stated that when Chatelain received the January 4 statement, he asked to review the time sheets, after which he would pay the bill.
In Deutsch, Kerrigan & Stiles v. Rault, above, defendant Rault had agreed at a meeting between firm partners and the defendants in a lawsuit to pay his share of 25% of the legal fees, the rest to be borne by his codefendants. He did not protest any of the six statements the firm mailed during the seven-year period of the suit. He was fully aware of the ongoing, extensive litigation, being informed of the lawsuit's progress and receiving copies of all documents. In the instant case, Chatelain was in constant telephone contact with Theriot, attended meetings, and was fully aware or had reason to be aware, of the attorney's efforts in his behalf. By his silence, he showed his assent to an oral agreement.
In the absence of evidence of manifest error or any abuse of discretion on the part of the trial court, its judgment should not be disturbed. Canter v. Koehring, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Accordingly, we affirm the judge's finding that a second agreement existed between Chatelain and Theriot.
Having determined that an oral contract existed, we now reach the issue of the correctness of the court's award of $7,813.50 to Theriot for services performed, with legal interest from date of judicial demand plus costs.
The trial judge adopted the amount of Theriot's first bill, at $70 per hour, as a "not unconscionable" fee. He stated in his reasons for judgment that the amount of the second bill was arbitrary and that Chatelain had not agreed to pay by a certain date, after which Theriot could change the fee.
There is ample authority for the rule that courts may rely upon their own expertise to fix the fees of an attorney. Fiasconaro & Fiasconaro v. Orlando, 342 So.2d 1261 (La.App. 4th Cir.1977); Lynch v. Burglass, 286 So.2d 170 (La.App. 4th Cir.1973). In Ray v. Superior Iron Works & Supply Co., Inc., 284 So.2d 140 (La.App. 3rd Cir. 1973) at 147 the court said that, in determining reasonable attorney's fees:
"... Factors deemed worthy of consideration include the amount involved, the skill of the attorney, and the amount of work necessarily undertaken by the attorney. (Roberie v. Ashy Construction Company, 215 So.2d 857 (La.App. 3rd Cir. 1968)...."
See also Dwyer Lumber Co. v. Murphy Lumber & Supply Co., above. In Simon v. Metoyer, 383 So.2d 1321 (La.App. 3rd Cir. 1980), the plaintiff attorney placed his entire file in evidence and testified as to the services performed. The court found, in reviewing the evidence that the quality of services performed, the seriousness of the criminal charge which the attorney was to *834 defend, and "the high degree of skill reflected in his work product" merited a higher judgment than the trial court awarded.
The testimony of the bank's attorney, Joseph Drolla, Jr., corroborates Theriot's claim as to the complexity of the problems with which he had to deal. The time sheets show the amount of time spent and the time pressures placed upon Theriot. The very fact that Chatelain was able to pay the bank loan in full is an indication of the worth of Theriot's work in his behalf. For these reasons, we see no reason to disturb the amount of the judgment.
Chatelain asks that in the event the court finds an award of quantum meruit to be appropriate, interest should run from the date of judgment rather than from the date of judicial demand. As we hold that a contract existed, we shall not disturb the award of interest which may run from the date the debt is due.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.