|, WOODARD, Judge.
Mr. David K. Hebert retained Mr. P. Charles Calahan’s services to recover excessive legal fees against the law firm of Haik, Minvielle & Grubbs. After successfully recovering $30,000.00 for Mr. Hebert, Mr. Calahan took $12,500.00 in attorney’s fees. After two trials on the merits, the trial court awarded Mr. Hebert $11,500.00 of the legal fees taken. Mr. Calahan appeals. We affirm.
H* ‡ *
During the summer of 2000, Mr. Raymond Gaspard approached Mr. Calahan regarding the representation of his brother, Mr. Hebert, in an excessive legal fee case against the law firm of Haik, Minv-ielle & Grubbs. This firm had represented Mr. Hebert in a Longshoreman’s Harbor Workers’ Compensation dispute. Before speaking with Mr. Hebert, Mr. Calahan began some preliminary research, based on the brother’s interpretation of Mr. Hebert’s case.
Sometime in July, Mr. Hebert approached Mr. Calahan about his claim. Needing additional information, Mr. Cala-han instructed Mr. Hebert to return to Haik, Minvielle & Grubbs to request and gather documentation regarding the nature of the underlying case with Haik and why his legal fees were so excessive. Mr. Hebert returned with several documents after which the parties discussed Mr. Cala-han’s legal fees based on a standard contingency fee agreement. Mr. Calahan proposed that he recover between 40% and 50% of any fees recovered. At that time, Mr. Hebert refused to sign the agreement and did not retain him. Mr. Calahan acknowledges that he did not accept employment. The parties agreed to negotiate the fee at a later time.
Mr. Calahan began some preliminary research to determine if Mr. Hebert had a meritorious or valid claim. In September 2000, Mr. Hebert officially retained his services. Once again, the parties discussed a contingency fee agreement which Mr. Hebert did not sign because he objected to signing the document until the difficulty of the task had been determined. After further negotiation, they agreed that the legal fees would be paid based upon the time Mr. Calahan expended on Mr. Hebert’s case. Mr. Hebert expected Mr. Calahan to simply write a letter on his behalf to the firm.
October 2, 2000, Mr. Calahan faxed a one-page demand letter to the Haik law firm, seeking a refund of the excessive legal fees. Although the law firm 1 ^withheld $36,666.67 in fees, including expenses, under 33 U.S.C. § 928(e), the legal fee was limited to $6,066.27. Mr. Calahan, also, informed the firm of his intent to audit the fees and expenses. Two days later, on October 4, 2000, Haik agreed to settle his claim for $30,000.00, presented Mr. Hebert with a release, and paid him *1158 $30,000.00, cash, as reimbursement and/or settlement of the claim. However, immediately before signing the agreement, Mr. Hebert changed his mind, indicating that the recovery should be more and include a penalty or “spanking” fee. After discussing this with Mr. Calahan, he agreed to the $30,000.00 settlement. Subsequently, Mr. Calahan informed him of the $12,500.00 attorney fee for his own services. When Mr. Hebert came into the office to execute the release, he immediately expressed his disapproval of the $12,500.00 fee, asserting that the work was not difficult.
The terms of the fee arrangement between Mr. Calahan and Mr. Hebert were not included in the release. At the time of signing, the parties still had not executed a contingency fee contract. Notwithstanding, Mr. Calahan unilaterally withheld $12,500.00 of the $30,000.00 amount as his fee for services rendered and submitted the remaining $17,500.00 to Mr. Hebert. This matter was, then, submitted to the Louisiana Attorney Disciplinary Board and to the trial court for resolution.
The trial court found that the fee was excessive and ruled that Mr. Calahan could not charge for services performed on Mr. Hebert’s behalf before accepting the case.
[[Image here]]
Standard op Review
Our standard of review in this case is one of manifest error. It is well settled that an appellate court may not set aside a trial court’s finding of fact absent manifest error.[1] In applying this standard, we must not determine whether the trial court was right or wrong but whether the fact finder’s conclusion was reasonable.[2] Consequently, where there are permissible views of evidence, the factfinder’s choice ^between them can never be manifestly erroneous. Thus, if the trial court’s findings are reasonable, in light of the record, we may not reverse, even if convinced that, had we been sitting as the trier of fact, we would have weighed the evidence differently.[3]
Rules of Professional Conduct
Louisiana Civil Code Article 1983 provides that “[c]ontracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith.” Courts must interpret contracts according to the common intent of the parties.[4] Additionally! “[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.”[5] Additionally, “Louisiana courts have long approved of the contingent fee contract to compensate attorneys.”[6]
In his first assignment of error, Mr. Calahan argues that the trial court erred in not applying the considerations of the Rules of Professional Conduct in determining whether or not the fee was reasonable. Rules of Professional Conduct, Rule 1.5(a) provides that:
A lawyer’s fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
*1159 (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
|4(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
Mr. Calahan asserts that the parties had a contingency fee agreement based upon an oral contract. Rule 1.5(c) provides, in pertinent part:
A fee may be contingent on the outcome of the matter for which the service is rendered except in a matter in which a contingent fee is prohibited by Paragraph (d) or other law. A contingent fee agreement shall be in wyiting and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.
(Emphasis added.) Notwithstanding, Mr. Calahan maintains that the fee was not based upon a percentage taken:
Q. Now, where did you get the $12,500 dollar fee from?
A. That is—
Q. What is the basis of it; where did that amount of figure come from?
A. Out of the air. It wasn’t based on a percentage because it doesn’t equal any even number as a percentage—
Q. About 41 to 42 percent.
A. Just a division of what we felt should have been earned.
Q. Well, you know, a fee according to 1.5 has to be reasonable and there has to be a basis for that fee. So what is the basis for the fee that you have worked on this case for a few weeks?
A. The basis of the fee was, I guess, the amount of recovery. The recovery was in excess of his wildest expectations, and that’s what he felt that him getting the money was worth.
Emphasis’ added.) Mr. Calahan explained:
A. And I just picked out a round nice figure of $12,500, and when he saw $17,500 out of the blue, he was elated. But then he perceived it was too easy on my part. Of course, he doesn’t know exactly what I did. He is illiterate. He is a blue collar worker. Any money that he makes, is hard to come by, and he just thought that it was too easy for me.
(Emphasis added.)
It is obvious from Mr. Calahan’s own words that he did not, even, know what he did to warrant charging thousands of dollars. Generally, collections is not necessarily an extremely difficult field. Mr. Calahan asserted that he expended 100 hours working on Mr. Hebert’s case. However, he could only reconstruct 81 of those hours and did so without the minute detail normally associated with billing. Indeed, the trial court found that he most likely expended only five hours researching and drafting the demand letter. Furthermore, we do not find any evidence that Mr. Calahan’s acceptance of this particular *1160 employment precluded him from accepting any other employment. Also, the record contains no significant information concerning Mr. Calahan’s reputation or experience in this particular field.
Moreover, Mr. Hebert and Mr. Calahan did not enter into a written contingency fee agreement as the law dictates. Thus, he was not entitled to 41% of the Mr. Hebert’s recovery. Furthermore, the trial court found that he did not perform 81 hours of work on Mr. Hebert’s claim. Rather, his work was limited to writing a demand letter. Where there are two permissible views of the evidence, the trial court’s choice between them can never be manifestly erroneous.[7] The trial court found that $12,500.00 was excessive. Indeed, we find that this fee is grossly out of proportion with the fees normally associated with writing a demand letter.[8] As there was no agreement concerning how much the legal fee would be or how it would be calculated, we find that the trial court properly found that Mr. Calahan was entitled to $1,000.00 for services rendered. Accordingly, we affirm this part of its judgment.
| ^Exception of PresCRiption
Mr. Calahan asserts that he established a prima facie exception of prescription. He alleges that prescription began to run on or about October 4, 2000, the date that the checks were issued from the attorney trust account and delivered to Mr. Calahan and Mr. Hebert. On October 19, 2001, Mr. Hebert filed a supplemental and amending petition, adding P. Charles Calahan, Attorney at Law, and P. Charles Calahan, Attorney at Law, A Professional Law Corporation as additional Defendants, and alleging that the Defendants were jointly liable, in solido, with Mr. Calahan as an individual. Mr. Calahan contends that the claim against P. Charles Calahan, Attorney at Law, and P. Charles Calahan, Attorney at Law, A Professional Law Corporation, would have prescribed because these parties were not named with Mr. Calahan in the original petition.
La.Code Civ.P. art. 1153 governs the “relating back” doctrine:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
The Louisiana Supreme Court explained the “relating back” component and listed four criteria:[9]
1. The amended claim must arise out of the same transaction or occurrence set forth in the original pleading;
2. The purported substituted defendant must have received notice of the institution of the action such that he 'will not be prejudiced in maintaining a defense on the merits;
3. The purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him;
4. The purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed.
*1161 |7In the instant case, the amended claim arises out of the claim for excessive legal fees, delineated in the original pleading. It does not substitute defendants. It adds Defendants, P. Charles Calahan, Attorney at Law, and P. Charles Calahan, A Professional Law Corporation, who will not be prejudiced in maintaining a defense on the merits. Since the additional Defendants are solidarity liable for Mr. Hebert’s loss, they knew that, but for the mistake concerning the identify of the proper party Defendant, the action would have been brought against them. Also, the additional Defendants are not wholly new or unrelated Defendants. They are separate entities which Mr. Calahan created to limit his liability. Lastly, this is not a new cause of action which, otherwise, would have prescribed.
Accordingly, we affirm this portion of the trial court’s judgment.
Because of this finding disposes of the issue, we pretermit a discussion concerning the necessity to pierce the corporate veil, which Mr. Calahan raises.
CONCLUSION
Mr. Calahan appealed the trial court’s $11,500.00 award to Mr. Hebert, regarding excessive legal fees, its denial of his exception of prescription, and its ruling that Mr. Calahan, individually, as an attorney at law, and as a professional law corporation, were jointly liable for Mr. Hebert’s loss. For the reasons above, we affirm the trial court’s judgment and assess costs to Mr. Calahan.
AFFIRMED.

. Rosell v. ESCO, 549 So.2d 840 (La.1989).

. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97); 696 So.2d 551.

. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990).

. La.Civ.Code art.2045.

. La.Civ.Code art.2046.

. O’Rourke v. Cairns, 95-3054, p. 4, (La.11/25/96), 683 So.2d 697, 700.

. Rosell, 549 So.2d 840.

. Desselle v. Moreauville State Bank, 553 So.2d 1067 (La.App. 3 Cir.1989); writ denied, 558 So.2d 584 (La.1990).

. Ray v. Alexandria Mall, through St. Paul Property & Liab. Ins., 434 So.2d 1083, 1087 (La.1983).