PITMAN, J.
11Defendants Hunter Estates, Inc., and 26 other persons or “their unopened successions” appeal the award of $50,037.21 in expenses and attorney fees to Intervenor John Hoychick, who represented them in a suit for partition by licitation. For the following reasons, the judgment of the trial court awarding attorney fees is affirmed. Intervenor’s request for attorney fees for frivolous appeal under La. C.C.P. art. 2164 is denied.
FACTS
Intervenor was originally hired by Ed Hunter and Lucky White, on behalf of Hunter Estates, Inc., and 26 other persons or their successions,[1] who all owned, in *1258 indivisión, 480 acres of land in Madison Parish, to represent them in matters of several unopened successions, to obtain judgments of possession and to handle other related matters as they arose.
Although Intervenor’s employment began for the purpose of opening successions and securing judgments of possession, a short time after he was hired, it came to his attention that there were third parties in Georgia who had been sold an interest in the land by some of the former owners in indivisión, and these third parties were asserting claims of ownership. In 2009, those third parties filed the underlying litigation of Delta Land & Investments, LLC v. Hunter Estates, Inc., et al, No. 09-90 on the docket of Madison Parish, for partition by licitation of the 480 acres at issue. With Defendants’ consent, Interve-nor’s attention was diverted from his original purpose of opening and closing the successions to defense of the Delta'Land & Investments litigation. During the time he represented Defendants, Intervenor filed many pleadings and memoranda, argued motions in court, conducted discovery and otherwise vigorously defended the lawsuit.
On January 3, 2013, Defendants allegedly hired attorney William Hallack to represent them and informed Intervenor of the change. Intervenor fully cooperated and turned over the suit file to Hallack, asking him when he could expect payment from his former clients. The record contains email communication from Intervenor to Hallack requesting that Defendants pay him the money owed for his representation. The record also contains an email from Hallack to Intervenor, the purpose of which was to confirm notes made during a telephone conversation between them that: 1) Defendants Hunter/Hodges/Givens acknowledge owing the fees and costs that he had billed; 2) the bulk of the funds to pay the fees and costs will come from funds on deposit in the registry of the court in connection with some pending expropriation suits; 3) in order to access the funds, Hallack had plenty of legal work to do, and 4) Hallack planned to send Inter-venor the motion and orders to withdraw and substitute counsel in the expropriation suits, the succession proceedings and the partition suit. Although Hallack took possession of the file materials, he never filed a motion to enroll as counsel. In July 2014, Ed Hunter and Lucky White contacted Intervenor and asked him to resume his role as their attorney.
Intervenor stated that, in June 2015, he received a telephone call from the trial judge who told him that attorney Gregory Cook had enrolled in April 2015 as counsel of record representing Defendants in the case. The telephone call from the trial judge was the first notice he had that other counsel had been secured.
| ^Intervenor filed this petition for intervention for attorney fees on November 12, 2015, along with an attached exhibit listing fees for services allegedly rendered from April 13, 2009, until September 28, 2015, plus any other fees and costs incurred in the filing and prosecution of the intervention. A hearing was held on February 18, 2016. Intervenor was the only witness to testify, which he did by narrative, stating that he was first employed by the Hunter family, including Ed Hunter and Hunter Estates, Inc., various successions, and Lucky White, who was involved with the Hunter and Hodges families. He stated that his initial retainer was for the purpose *1259 of opening approximately 17 successions so that property owned by the families in Madison Parish could be placed in a limited liability company (“LLC”). The Givens family also became part of the group he represented since they have some ownership interest in Hunter Estates, Inc. He attempted to introduce into evidence a letter dated September 22, 2008, from him to Ed Hunter, which “basically kind of spells out some of what would have to be done.” He contends this is a retainer letter. Defendants’ attorney objected, stating that the letter was based on Intervenor’s understanding and noted that it did not contain Ed Hunter’s signature. Despite this fact, Intervenor insisted that it was a letter of retainer and that, on page nine, a request was made for a payment of $10,000 to “start the process,” which he acknowledged he had received. Defendants’ attorney’s objections to the introduction of the letter were overruled.
Intervenor stated that, during the course of preparation to open the successions, he became aware that a Mr. Barr from Georgia had acquired some undivided interest in the Hunter property. Barr filed the underlying lawsuit to partition the property, which caused the delay of the successions 14until the partition matter was resolved. Intervenor claims that all of the fees and expenses for which he was seeking recovery were incurred as a result of the defense of the underlying suit by Mr. Barr.
When questioned by Defendants’ attorney if the Hunters knew he was representing them in the partition suit, Intervenor answered affirmatively, but stated there was no separate agreement, other than an oral request by Ed Hunter and Lucky White to represent them in the partition, and his compliance with that request. No separate letter of representation confirming the agreement was sent to the parties. Ed Hunter is now deceased and cannot confirm these facts.
Intervenor introduced his exhibit with the list of items billed and time spent totaling $50,037.26, after credits for some payments received. He testified that, during Hallack’s time as attorney, Hallack had confirmed to him that the Defendants acknowledged their debt to him. Defendants’ attorney objected to hearsay, but he produced an email as written proof of their telephone conversation wherein Hallack confirmed and acknowledged that the fees were owed. Defendants’ attorney objected to the admission of the email and Interve-nor’s business records as proof of retainer and admission of a debt.
Intervenor further testified that, after Hallack failed to enroll as counsel, Ed Hunter and Lucky White approached him in July ,2014, and asked him to resume his representation of them in the litigation. He stated that his representation of these clients was based on an hourly rate qf $200 per hour and that his associate, Ashley Morris, was compensated at a rate of $125 per hour. He also stated that, although his agreement with the family was not in writing, they consented to the agreement by paying the charges |Kfor a while. Over time, Ed Hunter had made check payments of $1,459, $8,897.56, $2,349.39 and $394.41, all of which were reflected in invoices detailed in his work records.
Defendants’ attorney asked for further proof of expenses, such as receipts from the Clerk of Court’s Office, bank statements and canceled checks, to substantiate the document asserting the amount due. Intervenor stated that documentation other than his work records would have to have been subpoenaed and that Defendants’ attorney had failed to issue one. He testified:
I am giving you my testimony. ... I am giving to you the invoices that have been *1260 produced by my office repeatedly since 2010, and your clients never objected not the first time. The only time I received any objection to any of this, sir, is when you became their attorney.
On cross-examination, Intervenor testified that the amounts due were primarily from the Hunter family since the Hodges-es always paid their debts and did not owe him anything other than their percentage of the Hunter Estate debt. Also during cross-examination, Defendants’ attorney asked him, “At any time during your representation did you attempt to acquire an ownership interest in the Hunter Estate?” He answered negatively. Then he was asked, “Was it your understanding that you might be able to take some ownership interest in the event they can’t pay these exorbitant legal fees?” He answered negatively again. He was also asked why none of the successions were ever closed and judgments of possession rendered, and he answered at least three times that, when the partition litigation began, the clients decided the property should be transferred from the estates into an LLC and that all of his time and energy was being spent on the partition suit rather than the successions.
| At the end of the hearing, the trial court commented, “I have to say, that Mr. Hoychick and his office has had a reputation for generations as being one of the top law firms in the State of Louisiana and that I have never known of any problem that he’s had with any ethics” and then rendered judgment in favor of Intervenor for $50,037.26. Defendants have filed a sus-pensive appeal. Intervenor answered the appeal, claiming he is entitled to attorney fees and expenses incurred during the appellate process.
DISCUSSION
Defendants filed this appeal seeking review of the award of attorney fees to In-tervenor. Their arguments are based on the fact that there is no written record of mutual agreement between the parties regarding the amount of fees to be charged at any time throughout the alleged representation, and there was no viable attempt to collect any outstanding fees until after the second attorney was hired and Interve-nor filed his suit. Defendant Hunter Estates, Inc., allegedly does not recall any written demand for payment being presented and claims no payments were made by any officers or heirs because the objectives of the representation, i.e., the obtaining of judgments of possession in the successions, were not met. Although this claim was made in Defendants’ brief, it should be noted that no Defendants testified at the hearing regarding the attorney-client relationship or their contract with Intervenor.
Defendants argue that, although Inter-venor maintains that the legal fees and charges were billed hourly, they cannot understand why he would continue to provide legal services if he was not being compensated. They contend that failure to collect attorney fees for seven years implicitly indicates that the matter was on a contingency fee basis.
| ./Defendants also argue that the trial court erred in accepting the letter from Intervenor to the Defendants as a retainer contract. They claim that the letter was unsigned by them and was without terms, conditions or an amount for services, yet the trial court found that it implicitly formed the basis of a contract for legal representation. They argue that the hourly fee structure allowed Intervenor to charge fees during the time that the firm’s services allegedly accrued throughout the litigation, and the litigation was minimal, irrespective of the outcome, i.e., a final judgment was never reached in either the successions or the partition suit.
*1261 Defendants further argue that the purported verbal contract ambiguously set forth an hourly fee without regard to the outcome of the matter and that such an ambiguity must be construed against the drafter. They also dispute the individual charges reflected on the bill and complain that, had Intervenor billed for actual services rendered in furtherance of the objective, the fee would be much less than the stated $50,000.
Defendants contend that the trial court erred in accepting Intervenor’s log or record of billable hours for purported legal services when the work had no substantive value related to resolving the legal issues or meeting the legal objective of opening and closing the successions. Specifically, they contest certain charges for communications between law office staff that is reflected in the exhibit presented as proof of the charges billed. They argue that corroborating evidence is and was available, but was not produced by Intervenor.
Defendants also argue that the trial court’s attorney fee award of over $50,000 is unreasonable in light of the fact that the fees were generated without a written retainer over the course of seven years without settlement |sor demand prior to withdrawal from the case. They contend that attorney fees are awarded only by statute or by contract and that absent in this situation is a stipulation by contract that these fees were recoverable. They argue that they did not expect to be billed for services purportedly rendered over a term of seven years for a mere possibility, speculation or unsupported work on a case that ends with no results and withdrawal from the case initiated by Intervenor.
Defendants further argue that the award of attorney fees in this situation violates Rule 1.5 of the Louisiana Rules of Professional Conduct, which states that attorneys “shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.” Factors to be considered when reviewing these situations include the amount involved and the results obtained. In this case, they argue that Intervenor failed to obtain even one judgment of possession in the successions he was hired to resolve.
Defendants take umbrage at the fact that the trial court stated that Intervenor and his office had a good reputation in the State of Louisiana and that it had never known of any ethical problems. They claim that this statement by the trial court was speculative and prejudicial and reached beyond the facts and circumstances of the case, implying that, since the fact finder was not aware of any problems, there were no problems. They complain that the statement “offends notions of openness and impartiality.”
Intervenor argues that a trial court has much discretion in fixing an award of attorney fees and that its decision will not be modified on appeal without a finding of an abuse of discretion. The trial court is to determine the reasonable value of the services rendered and the value received by the | fldient. Unless the appellate court believes the fees are excessive and that a lesser amount is more reasonable, it does not have the discretion to alter an award of attorney fees. The burden of proof to show excessive fees falls on the client, who must demonstrate by a preponderance of the evidence that the fee is clearly excessive.
Intervenor claims that there was much evidence that a contract existed between the parties and that, through the email with Hallack, Defendants acknowledged their debt to him. He was the only person who testified at the hearing; Defendants were not present. Therefore, his testimony went unchallenged.
Intervenor further argues that, while Defendants are insisting that the attorney fees are not owed because the objective of *1262 his original employment, the judgments of possession in the successions, was not achieved, they are ignoring the fact that they were involved in separate litigation, i.e., partition by licitation of 480 acres of immovable property, that had nothing to do with the successions. He points out that there is not one succession in the record. His list of services rendered, including filings made in furtherance of the partition litigation, notes that there were four different hearings in Tallulah, Louisiana, and 29 different pleadings filed by him on behalf of Hunter Estates, Inc., all of which provides proof that the fees were earned.
Intervenor contends that Defendants’ last assignment of error that the remark made by the trial court casts aspersion on the court and questions its integrity is “outlandish.”
Intervenor finally argues that this is a frivolous appeal and that he is entitled to penalties and damages, including attorney fees.
ImThe trial court is vested with great discretion in arriving at an award of attorney fees. Walker, Tooke & Lyons, L.L.P. v. Sapp, 37,966 (La.App. 2d Cir. 12/10/03), 862 So.2d 414, writ not considered, 04-0088 (La. 3/19/04), 869 So.2d 836. The exercise of this discretion will not be reversed on appeal without a showing of abuse of discretion. Id.
Fowler v. Jordan, 430 So.2d 711 (La.App. 2d Cir. 1983), involved both a written agreement of retainer between the attorney and the clients, who were brothers, and several oral contracts pertaining to other issues which followed and resulted in three separate suits being filed. After much litigation and negotiation, the attorney obtained a favorable settlement offer on behalf of his clients, but they would not accept the settlement and, instead, released him as their attorney and refused to pay him when he billed them for his time. The attorney filed suit to recover compensation for the time he spent prosecuting and defending the three suits for the clients. A jury trial was held and the attorney claimed he had rendered 1,090 hours of legal services for the clients under the three employment contracts. All but one of the defendants were dismissed from the suit since the one remaining had acted as group spokesman. At the close of four days of testimony on the extent and adeptness of the attorney’s efforts on behalf of the client, the jury rendered a verdict in the attorney’s favor, finding that he was entitled to $53,200 in attorney fees and $1,600 in expenses. Defendant appealed.
The Fowler court stated that an employment contract between an attorney and his client is a mandate, and a client may revoke that mandate and discharge his attorney at will, such revocation terminating and dissolving the contract. Unless discharged for cause, an attorney who has been dismissed by his client is entitled to be reimbursed for his services on a Inquantum meruit basis, regardless of whether the attorney was initially retained under a contingency, set fee or hourly retainer. Fowler, supra, citing Chiasson v. Law Firm of Dragon & Kellner, 335 So.2d 87 (La.App. 3d Cir. 1976); Krebs v. Bailey’s Equip. Rentals, Inc., 328 So.2d 775 (La.App. 1st Cir. 1976); Guilbeau v. Fireman’s Fund Ins. Co., 293 So.2d 216 (La.App. 3d Cir. 1974).
The attorney who has been discharged and is seeking to recover on a quantum meruit basis assumes the burden of proving the value of his services and the extent of his expenses. Recovery is limited to the actual value of the service rendered. Fowler, supra; Chiasson, supra. Thus, the discharged attorney may not collect an excessive stipend and has no right to fees not actually earned. It is expressly within the province of the appellate courts of this state, moreover, to scrutinize and regulate *1263 attorney-client relations and prevent the imposition of unjust fees. La. Const. Art. 5, § 5(B) (1974); Singer Hutner Levine See-man & Stuart v. Louisiana State Bar Ass’n, 378 So.2d 423 (La. 1979). Fowler, supra.
In Johnson v. Ins. Co. of N. Am., 27,847 (La.App. 2d Cir. 1/24/96), 666 So.2d 1286, this court stated that the considerations for determining a quantum meruit fee are as follows: the time and labor required in prosecuting or defending the claim; the difficulty and novelty of the questions involved; the degree to which the case precluded other employment; the fees customarily charged in the locality for similar services; the amount of money involved and the results obtained; the time constraints operative; and the experience, reputation and ability of the lawyer. Pharis & Pharis v. Rayner, 406 So.2d 723 (La.App. 3d Cir. 1981); State Bar Articles of Incorporation, Art. 16; Rules of Prof. Conduct, 112Rule 1.5. A quantum meruit analysis properly evaluates not merely the hours expended, but the results and benefits obtained. Smith v. Westside Transit Lines, Inc., 313 So.2d 371 (La.App. 4th Cir. 1975), writ denied, 318 So.2d 43 (La. 1975).
In Cupit v. Hernandez, 45,670 (La.App. 2d Cir. 9/29/10), 48 So.3d 1114, writ denied, 10-2466 (La. 12/17/10), 51 So.3d 7, this court stated that a reasonable attorney fee is determined by the facts of an individual case. The trial court has discretion to determine the amount of an attorney fee based upon the court’s own knowledge, the evidence, and the court’s observation of the case and the record. Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc., 32,441 (La.App. 2d Cir. 12/08/99), 748 So.2d 594. A court does not have to hear evidence concerning time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered. Cupit, supra.

The oral agreement

We first address the issue of whether the contract of employment was required to be in writing to be effective between the parties. It is obvious that Intervenor and Defendants confected an agreement between themselves whereby Intervenor was to perform legal work for them, particularly as to the need to open several successions. However, it is equally obvious, through Intervenor’s testimony, that other matters concerning all of these landowners arose, and he was asked to shift his focus from the successions to the litigation for partition by licitation. Inter-venor testified several times to this oral agreement to focus on the partition litigation instead of the successions. He also testified that he was paid his original requested retainer of $10,000, that he submitted bills and that some of them were paid. WeJjjfind that the trial court did not err in determining that a contract of retention for legal counsel had been entered into between Intervenor and Defendants. This assignment of error is, therefore, without merit.

The failure to successfully close the successions

Defendants complained that the trial court erred in awarding attorney fees when the attorney did not reach the result for which he was hired, i.e., the successions were not completed, the work he performed was not in furtherance of the objective for which he was hired and the amount awarded offended Rule 1.5 of the La. Rules of Prof. Conduct. These arguments are not well founded.
Intervenor’s testimony at trial that the emphasis of his employment shifted from the opening and completion of the successions to the defense of the suit for parti *1264 tion by licitation, was accepted by the trial court and was not challenged by any evidence presented by Defendants. The record of the underlying litigation shows that Intervenor attended four hearings and filed 29 pleadings in furtherance of the litigation. Intervenor is entitled to be paid for the work he performed. Therefore, this assignment of error is without merit.

The trial court’s acceptance of the proof offered,

Defendants claim that the trial court erred in accepting Intervenor’s “self-made records,” subject to his personal account and that of his staff, which were unreliable and unsubstantiated. They claim that no valid corroborating proof or independent bank records of fees and costs incurred in the matter were presented at trial.
As in Cwpit, swpra, a reasonable attorney fee is determined by the facts of an individual case and the trial court has discretion to determine that |Mamount based upon the court’s own knowledge, the evidence and the court’s observation of the case and the record. The court does not have to hear evidence concerning time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered.
Intervenor was the only person who presented any evidence in regard to the amount of work performed, time spent and charges billed in this litigation. He provided the court with the email communication with Hallack, who represented Defendants for a period of time, which acknowledged that Defendants agreed that the fees were owed. It was not until Defendants’ current attorney assumed representation in the case that any question arose regarding payment to Intervenor.
As is evidenced by the record, Interve-nor tenaciously and with diligence advocated his clients’ position in the partition litigation and spent a great deal of time in the endeavor. He is, therefore, entitled under a quantum meruit analysis to a fee commensurate with the diligence, skill, time and effort he has invested in the case. With no evidence to contradict his assertion of the amount due to him, the trial court’s decision to award $50,037.21 cannot be said to be an abuse of discretion. For those reasons, this assignment of error is without merit.

The alleged prejudicial statement by the trial court

This assignment of error is without merit and warrants no discussion.

Intervenor’s request for attorney fees for frivolous appeal

In his answer to this appeal, Intervenor claims the appeal was frivolous and filed only for delay. As such, he requests attorney fees and expenses for a frivolous appeal in the amount, at a minimum, of $2,500.
| ifiLa. C.C.P. art. 2164 concerns the scope of an appeal and the action to be taken and states that the appellate court shall render any judgment which is just, legal and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
La. C.C.P. art. 2164 grants the appellate court the authority to address the issue of frivolous appeal from the proceedings conducted before it. The award of damages and attorney fees for frivolous appeal, like sanctions at the trial court level, are utilized to curtail the filing of appeals that are intended to delay litigation, harass another party or those that have no reasonable basis in fact or law. Nesbitt v. Nesbitt, 46, 514 (La. App. 2d *1265 Cir. 9/21/11), 79 So.3d 347, writ denied, 11-2301 (La. 12/2/11), 76 So.3d 1178.
Although an appeal or answer to the appeal is required for appellate review and modification of the trial court’s award of damages, the issue of frivolous appeal first arises at the appellate court level and, therefore, may be adjudicated and remedied by this court. The jurisprudence has also determined that, when an issue of attorney fees is present in the case, it is within the appellate court’s discretion to award or increase attorney fees for the expense of the appeal regardless of whether the appellee answered the appeal. Factors considered in determining the amount of attorney fees include the skill exercised by the attorney and the time and work required on appeal. Id.
La. C.C.P. art. 2164 is penal in nature and is to be strictly construed. Appeals are always favored and, unless the appeal is unquestionably |1Rfrivolous, damages will not be allowed. Damages for frivolous appeal are only allowed when it is obvious that the appeal was taken solely for delay, that the appeal fails to raise a serious legal question or that counsel is not sincere in the view of the law he advocates, even though the court is of the opinion that such view is not meritorious. Cox v. O’Brien, 49,278 (La.App. 2d Cir. 8/13/14), 147 So.3d 809, writ denied, 14-1907 (La. 11/21/14), 160 So.3d 972.
After a review of the record, we do not consider Defendants’ appeal of the award of attorney fees to be frivolous or solely for purposes of delay. Therefore, we find that Intervenor’s request for attorney fees under La. C.C.P. art. 2164 is not warranted and so deny the relief sought.
CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of Intervenor John Hoychick and against Defendants Hunter Estates, Inc., et al, awarding $50,037.27 in attorney fees, is affirmed. Intervenor’s request for attorney fees pursuant to La. C.C.P. art. 2164 is denied. Costs of the appeal are assessed to Defendants, Hunter Estates, Inc., et al.
AFFIRMED; REQUEST FOR ATTORNEY FEES FOR FRIVOLOUS APPEAL DENIED.
CARAWAY, J., dissents with written reasons.

. Defendants are as follows: Hunter Estates, Inc.; Christella Hunter; Ed Hunter, III; the *1258 succession of Evelyn J. McFadden; and the individual unopened successions of Samuel Hunter, Jr., Albert Judge Hunter, Roscoe S. Barnes, Ester Ruth Kyle, Rosie Lee Dovers Wilson, Clara Givens, Willie B. Foster, Irea-lous Hodge, Hazel Hodge, Ada Hodge, Oscar Hunter, Beatrice Hunter White and James C. Hunter, Jr.