| | | |
|---|---|---|
| **NATHAN LEWIS** | * | **NO. 2020-CA-0333** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **ROBERT C. JENKINS** | * | |
| | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-11668, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge

\* \* \* \* \* \*

**Judge Daniel L. Dysart**

\* \* \* \* \* \*

(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Dale N. Atkins)

Scott G. Jones
LAW OFFICE OF SCOTT G. JONES
1414 Gause Boulevard, Suite 8
Slidell, LA 70458
    COUNSEL FOR PLAINTIFF/APPELLANT

Robert C. Jenkins, Jr.
631 St. Charles Avenue
New Orleans, LA 70130
    COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND RENDERED**
**APRIL 7, 2021**

This is an appeal of a judgment rendered in favor of defendant-appellee, Robert Jenkins, dismissing the lawsuit of plaintiff-appellant, Nathan Lewis. For the reasons set forth more fully herein, we set aside the trial court's judgment and render judgment in Mr. Lewis' favor in the amount of $15,700.

**FACTUAL AND PROCEDURAL BACKGROUND**

In December 2014, Nathan Lewis retained Robert Jenkins, a New Orleans attorney,[1] to represent him in connection with a pending legal malpractice case filed against an attorney who had handled a worker's compensation matter for Mr. Lewis. Almost two years later, on November 29, 2016, Mr. Lewis filed the instant lawsuit seeking the return of the sums Mr. Lewis paid Mr. Jenkins in connection with that representation. The Petition for Damages asserts claims for breach of contract, breach of services, and breach of fiduciary duty, and seeks the return of $46,000 paid to Mr. Jenkins.

---

[1] Mr. Jenkins has been recognized as "an expert in criminal defense practice and trial preparation." *In re Pryor*, 15-0243, p. 5 (La. 9/1/15), 179 So.3d 566, 568.

1

According to the Petition, at his initial meeting with Mr. Jenkins, Mr. Lewis paid Mr. Jenkins a retainer of $10,000. There was no discussion, however, about further fees, including the hourly rate Mr. Jenkins would charge. Nor did Mr. Jenkins ever enter into a written contract with Mr. Lewis for his services. Mr. Jenkins then began his representation of Mr. Lewis. When the original retainer Mr. Lewis paid was depleted, Mr. Jenkins requested additional fees from Mr. Lewis, who continued to pay those fees.

In February 2016, Mr. Lewis requested an accounting for the services Mr. Jenkins had provided and Mr. Jenkins provided an accounting, showing that Mr. Jenkins had billed 38 hours in December 2014 for reviewing documents, and an additional 32 hours in January 2015, also for reviewing documents. The accounting reflected that Mr. Jenkins was charging an hourly rate of $450.

The accounting further reflected that Mr. Jenkins prepared an opposition to a motion for summary judgment in the legal malpractice case in February 2015. In connection with that task, Mr. Jenkins billed 4 hours for "research memo" and an additional 4 hours for the memorandum.

According to the Petition, Mr. Jenkins failed to appear for the March 27, 2015 hearing on the motion for summary judgment, which the trial court granted. At the hearing, the trial judge specifically commented on the questionable admissibility of certain documents, but because Mr. Jenkins had not objected to them, they were admitted. Mr. Lewis further alleged that Mr. Jenkins advised that the summary judgment motion was granted because of Mr. Lewis' failure to

2

personally appear for the hearing, although Mr. Jenkins failed to provide notice to Mr. Lewis of the hearing date.

The Petition then alleged that Mr. Jenkins thereafter billed Mr. Lewis for 12 hours of work in April, 2015 for work in connection with a divorce matter. In all, Mr. Lewis paid Mr. Jenkins $46,000 for his representation, the majority of which, Mr. Lewis alleged, was for "document review."

The Petition alleged that, based upon these facts, Mr. Jenkins "is guilty of breach of fiduciary duty, breach of trust, negligence for failing to appear at a hearing, negligence for failing to enter into a written contract for legal services with the plaintiff, and for grossly overcharging plaintiff for review of documents, work which could possibly have been performed by a paralegal at a rate 1/10 of what the defendant charged to the plaintiff." Mr. Lewis prayed for the return of the sums paid to Mr. Jenkins, as well as interest and costs.

The Petition was purportedly served on Mr. Jenkins on January 26, 2017. After the time delays for filing an answer elapsed, Mr. Lewis moved for, and obtained, a default judgment awarding him $28,800, as well as costs and legal interest. The default judgment was subsequently set aside on the basis that Mr. Jenkins had not been personally served with the Petition. On the date of the alleged service, Mr. Jenkins was "unavailable" and those with whom he shared office space were under strict instructions not to accept service on his behalf.

The matter then proceeded to a bench trial on the merits on October 29, 2019. The trial court rendered judgment in Mr. Jenkins' favor on January 13, 2020, dismissing Mr. Lewis' lawsuit. This appeal followed.

**DISCUSSION**

At the outset, we note that the standard of review of a trial court's judgment is well-settled. An appellate court is to review a trial court's findings of fact "using the manifest error or clearly wrong standard of review." *Jaskot v. Lyle K. Doublet & Riverside Inspections, LLC*, 19-0207, p. 11 (La. App. 4 Cir. 3/4/20), 293 So.3d 1231, 1238. Thus, an appellate court should not set aside a trial court's finding of fact "unless that finding is clearly wrong in light of the record reviewed in its entirety." *Id.* (quoting *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La. 4/14/04), 874 So.2d 90, 98). In applying this standard, we must not determine whether the trial court was right or wrong but whether the fact finder's conclusion was reasonable. *See Harper v. State ex rel. Its Dep't of Health & Hosps.*, 14-0110, p. 6 (La. App. 4 Cir. 9/9/15), 176 So.3d 479, 485-86, *writ denied sub nom. Harper v. State ex rel. Dep't of Health & Hosps.*, 15-1819 (La. 1/8/16), 184 So.3d 692.

In the instant matter, having considered the obligations of an attorney to his client in light of the record before us, we find that the trial court erred in dismissing Mr. Lewis' lawsuit and in failing to award damages to Mr. Lewis for the unreasonable fees charged by Mr. Jenkins. In so finding, we note that our jurisprudence reflects that the reasonableness of attorney's fees "is determined on a case-by-case basis based on the facts of each individual case." *Boes Iron Works,*

4

*Inc. v. Gee Cee Grp., Inc.*, 16-0207, p. 26 (La. App. 4 Cir. 11/16/16), 206 So.3d 938, 957; *Filson v. Windsor Court Hotel*, 07-0755, p. 6 (La. App. 4 Cir. 7/23/08), 990 So.2d 63, 67 (a "reasonable attorney's fee is determined by the facts of an individual case.").

In the instant matter, we do not agree with the trial court that the amount of time Mr. Jenkins billed to Mr. Lewis for the work performed was reasonable. However, we do not disturb the hourly rate charged by Mr. Jenkins, as there was no evidence adduced at the trial regarding hourly attorney fee rates in the New Orleans area. *See*, *e.g.*, *In re Interdiction of DeMarco*, 09-1791, p. 15 (La. App. 1 Cir. 4/7/10), 38 So.3d 417, 428 ("no actual testimony or other evidence on 'the fee customarily charged in the locality for similar legal services' was presented at the hearing.").

The posture of this case is unusual; few cases address claims by a client seeking reimbursement of fees paid to an attorney. There are many cases, however, that concern the amount of attorney's fees owed to attorneys who have been discharged by their clients. Usually, these cases focus on the division of fees between the original attorney and a subsequently retained attorney who brings the case to a successful resolution.

As a general rule, the discharged attorney is "seeking to recover on a quantum meruit basis" and it is his "burden of proving the value of his services and the extent of his expenses;" his "[r]ecovery is limited to the actual value of the service rendered." *Delta Land & Investments, LLC v. Hunter Estates, Inc.*, 51,069,

p. 11 (La. App. 2 Cir. 1/11/17), 211 So.3d 1255, 1262, *writ denied*, 17-0264 (La. 3/31/17), 217 So.3d 364. We do not find any appreciable difference in analyzing the reasonableness of attorney's fees in the context of a lawyer seeking an award for attorney's fees and a client seeking a refund of excessive attorney's fees. The cases addressing an attorney's claim for attorney's fees provide us with guidance as to the issues raised in this appeal.

There is no dispute that Mr. Lewis retained Mr. Jenkins to represent him in the legal malpractice case and in his divorce proceeding, although the two did not enter into a written contract outlining the scope of that representation or the fees to be charged. The Louisiana Rules of Professional Conduct Rule 1.5(b) indicates that "[t]he scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing." Although a written contract is preferable, our jurisprudence reflects that oral agreements for representation are permissible. *See*, *e.g.*, *Seale & Ross, P.L.C. v. Holder*, 19-1487 (La. App. 1 Cir. 8/3/20), 310 So.3d 195; *Reynolds, Nelson, Theriot & Stahl v. Chatelain*, 428 So.2d 829, 832 (La. App. 5 Cir. 1983).

With no written contract detailing the agreement between Mr. Lewis and Mr. Jenkins regarding the terms of Mr. Jenkins' representation, we must look to other factors to determine the reasonableness of the time billed to Mr. Lewis. As the Louisiana Supreme Court has indicated, attorney fee contracts "are subject to review and control by the courts—most notably for reasonableness." *O'Rourke v. Cairns*, 95-3054, p. 5 (La. 11/25/96), 683 So.2d 697, 701.

This Court has also indicated that a court should consider the following "when deciding upon a reasonable fee award . . .

> (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge.

*Bd. of Sup'rs of Louisiana State Univ. v. Dixie Brewing Co.*, 15-1053, p. 14 (La. App. 4 Cir. 9/1/16), 200 So.3d 977, 987; *see also Whitney Bank v. NOGG, L.L.C.*, 15-1399, p. 6 (La. App. 1 Cir. 6/3/16), 194 So.3d 819, 824.[2]

When considering the reasonableness of attorney's fees on a quantum meruit basis, this Court has indicated that it is not simply the number of hours expended on a client's behalf that is to be considered. *See Mitchell v. Bradford*, 06-1496, p. 10 (La. App. 4 Cir. 6/20/07), 961 So.2d 1288, 1293 ("[t]he number of hours an attorney has spent on the matter is not dispositive of the fee due to that attorney."). As the *Mitchell* Court expounded:

> [U]nder a quantum meruit analysis, the court should consider a number of factors when an attorney discharged for cause seeks compensation for services rendered. *[Smith v. Westside Transit Lines, Inc.,]* 313 So.2d 371, 376 (La. App. 4th Cir.1975). The court noted that quantum meruit means "as much as he deserves;"

---

[2] These factors are based upon the Rule 1.5(a) of the Rules of Professional Conduct which govern attorney's fees. That Rule provides that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

> therefore the fact finder should look to the ultimate results obtained, the benefit to the case for each task undertaken by the attorney, and the quality and effectiveness of the services performed by both the discharged and subsequent counsel.

*Id.*, pp. 9-10, 961 So.2d at 1293. *See also Delta Land*, 51,069, p. 12, 211 So.3d at 1263 ("[a] quantum meruit analysis properly evaluates not merely the hours expended, but the results and benefits obtained.").

The *Delta Land* Court affirmed an award of $50,037.26, where the attorney made four court appearances and filed 29 pleadings. The Court noted that the attorney "tenaciously and with diligence advocated his clients' position in the partition litigation and spent a great deal of time in the endeavor" and thus, was "entitled under a quantum meruit analysis to a fee commensurate with the diligence, skill, time and effort he has invested in the case." *Id.*, 51,069, p. 14, 211 So.3d at 1264.

Numerous cases also recognize that "[a] court does not have to hear evidence concerning time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered." *Id.*, 51,069, p. 12, 211 So.3d at 1263; *see also Sewell v. Sewerage & Water Bd. of New Orleans*, 18-0996, pp. 21- 22 (La. App. 4 Cir. 5/29/19), --- So.3d ----,----, 2019 WL 2305673, *writ denied*, 19-01166 (La. 10/15/19), 280 So.3d 612; *Hooper v. Louisiana Pigment Co., LP*, 19-816, p. 48 (La. App. 3 Cir. 5/13/20), 298 So.3d 810, 835 (citing *Burford v. Burford*, 95-2318, p. 5 (La. App. 1 Cir. 6/28/96), 677 So.2d 722, 725); *Quinlan v. Sugar-Gold*, 53,348, p. 11 (La. App. 2 Cir. 3/11/20), 293 So.3d 722, 731, *writ denied*, 20-00744 (La. 10/6/20), 302 So.3d 536.

Importantly, with respect to the payment of fees in advance of representation (a retainer fee), Rule 1.5(f)(3) of the Rules of Professional Conduct expressly provides as follows:

> (f) Payment of fees in advance of services shall be subject to the following rules:
>
> ****
>
> (3) When the client pays the lawyer an advance deposit against fees which are to accrue in the future on an hourly or other agreed basis, the funds remain the property of the client and must be placed in the lawyer's trust account. The lawyer may transfer these funds as fees are earned from the trust account to the operating account, without further authorization from the client for each transfer, **but must render a periodic accounting for these funds as is reasonable under the circumstances**.

(Emphasis added).

The use of the term "must" in this statute reflects the mandatory nature of the obligation to render a periodic accounting to a client. *See* La. R.S. 1:3 ("[t]he word 'shall' is mandatory and the word 'may' is permissive.").

The record of this case clearly reflects that Mr. Jenkins did not comply with Rule 1.5(f)(3) by providing "periodic accountings" to Mr. Lewis. At trial, Mr. Jenkins admitted that he never produced interim or other statements to Mr. Lewis and only prepared the accounting after Mr. Lewis requested it. He explained that he did not send Mr. Lewis "any interim statements or other billing statements or accountings prior to providing . . . [the] accounting" because he had difficulty locating Mr. Lewis, "because [he] couldn't find him," despite the fact that Mr. Jenkins had Mr. Lewis' address and Mr. Lewis remained at that address at all times pertinent to this lawsuit.

9

We note that, at the commencement of the representation, Mr. Lewis presented at least five boxes of documents to Mr. Jenkins, which Mr. Lewis admitted were not organized and contained documents related to matters other than those for which Mr. Jenkins was retained. However, as concerns the time Mr. Jenkins billed for the review of these boxes, the record reflects that Mr. Jenkins maintained no contemporaneous records or other documentation to corroborate the time billed. To the contrary, Mr. Jenkins prepared the "accounting" only after Mr. Lewis discharged him and requested an accounting, more than a year after Mr. Lewis first retained him. Mr. Jenkins offered no writings or other notations by which he was able to reliably recreate, more than a year later, the number of hours he billed for the services reflected in the accounting. The accounting included 70 hours of time in December, 2014 and January, 2015, spent simply "review[ing] documents."

When questioned specifically about whether he maintained time slips for his billing records as he performed work, Mr. Jenkins testified that he "just documented it as needed when [he] finished it." He was then asked whether he "prepared in-house accounting statements on a monthly basis," to which he responded that he "did them on an as-needed basis once [he] reviewed the box." However, at trial, Mr. Jenkins did not offer any exhibits or documents, including time slips or other "in-house accounting statements."

During questioning by Mr. Lewis' attorney, the following exchange took place:

> Q.   How do you maintain your billing records on your files that you actually bill against?
>
> A.   Generally, what we will do is document it every time an individual comes in, write it on the

file, the hours. So, the actual accounting, I could go back and do it pretty quickly.

Again, at trial, Mr. Jenkins offered no exhibits, nor any writings "on the file" reflecting "the hours." Nor did Mr. Jenkins submit any writings reflecting his review of the documents contained in the boxes, despite his testimony that "each and every time [Mr. Lewis] came in[,]. . . [they] went into a conference room and sat there and discussed his case each and every time." Those discussions included "legal strategy based on what we had discovered in those boxes."

Notably, the accounting Mr. Jenkins prepared does not reflect any billings for meetings with Mr. Lewis at any time.

We also note that Mr. Jenkins's accounting includes time for Mr. Lewis' divorce proceeding, including two meetings with Mr. Lewis in April, 2015, to prepare Mr. Lewis for "trial" in his divorce proceeding. Mr. Jenkins likewise billed six hours for an appearance in St. Charles Parish for the divorce proceeding, although Mr. Jenkins admitted that another attorney in his office, Shandrea Williams, handled the divorce proceeding. Mr. Jenkins testified that "the actual divorce trial and those things, Ms. Williams handled that. She did the trial. She did the pre -- the conference and those things."[3]

Ms. Williams was not the only attorney in Mr. Jenkins' office who performed work for Mr. Lewis. Mr. Jenkins testified that other attorneys also performed some work on Mr. Lewis' behalf. The accounting, however, reflects charges solely for Mr. Jenkins' work. There are no entries in the accounting for the work performed by the other attorneys, including any time for Ms. Williams –

---

[3] Mr. Jenkins testified that, although this matter was handled by Ms. Williams, Mr. Lewis requested his presence in court.

not for any meetings with Mr. Lewis, preparation for court appearances, nor her appearance in court.

The only actual work product of Mr. Jenkins was the preparation of an opposition to a motion for summary judgment filed against Mr. Lewis in the legal malpractice case. Mr. Jenkins did not appear for the hearing on that motion, which the trial court granted.[4]

In connection with the motion for summary judgment, Mr. Jenkins' accounting reflects 2 hours of time to "Review Civil Court Petition for Summary Judgment," and another 16 hours to research and the prepare an opposition to the motion for summary judgment.[5] A copy of the opposition memorandum was not offered into evidence at the trial; accordingly, the complexity of that memorandum is unknown. We do know, however, from this Court's decision in *Lewis*, that the legal malpractice case was based upon Mr. Lewis' former counsel's alleged failure to timely file a lawsuit under the Longshore and Harbor Workers' Compensation Act for Mr. Lewis. "[T]he sole evidence" submitted in opposition to the motion for summary was Mr. Lewis' affidavit, which the trial court struck as "conclusory and self-serving." *Lewis*, 15-0798, pp. 1-2, 187 So.3d at 533. This Court affirmed and found no abuse of discretion in the trial court's striking of the affidavit. *Id.*, 15-0798, p. 2, 187 So.2d at 533.

---

[4] This Court noted that Mr. Jenkins' failure to appear for that hearing was "due to a 'calendaring issue.'" *Lewis v. Young*, 15-0798, p. 4, n.2 (La. App. 4 Cir. 2/24/16), 187 So.3d 531, 534.

[5] The accounting reflects an entry for 4 hours of time to "Prepare Motion in Opposition to Judge/Jury." Mr. Jenkins explained this entry as follows: "it probably was an opposition to a memo that was filed for summary judgment against him. So, that might be an error. Not a jury, judge." The remaining time includes 4 hours for "research memo" and another 8 hours to prepare the opposition memorandum.

In our view, it does not appear that the opposition to the motion for summary judgment was particularly complicated or required extensive research or writings. However, we are not prepared to find that the amount of time reflected on the accounting for preparing the opposition memorandum (18 hours) to be egregious. Nor do we disturb the fees associated with the divorce matter, as we cannot say that that time is unreasonable.

It is clear that in rendering its judgment, the trial court focused mainly on the number of boxes of documents Mr. Lewis provided to Mr. Jenkins. In its reasons for judgment, the trial court noted that "the record indicates that many hours were spent reviewing the documents Plaintiff brought to Defendant. There were five (5) or more boxes that also contained information from other legal matters that Defendant had to sift through." The trial court likewise noted that the lawsuit had been on-going for "some time."[6] There is no indication in the reasons for judgment that the trial court considered or weighed the reasonableness of the time billed to Mr. Lewis or the value of the services rendered; it simply accepted Mr. Jenkins' accounting.

In viewing the record as a whole, we find that it was unreasonable for Mr. Jenkins to bill 70 hours of time to sift through documents, some of which were admittedly related to other matters and did not require review. Mr. Jenkins produced no notations, summaries or any other writings documenting what he reviewed. That, coupled with the lack of any contemporaneous records, time slips or other notations detailing the hours he spent reviewing documents, leads us to

---

[6] As evidenced in this Court's decision in Mr. Lewis' appeal of the trial court's granting of the motion for summary judgment in the legal malpractice case (*Lewis*, 15-0798, 187 So.3d 531, 533), the legal malpractice case was filed after August 8, 2012 (the exact date is not contained in the opinion). Thus, when Mr. Lewis retained Mr. Jenkins in December, 2014, the legal malpractice case had been pending for no more than a year and four months.

conclude that the accounting, prepared more than a year after the work was performed, cannot be considered reliable or reasonable.

Our jurisprudence indicates that a reduction in attorney's fees charged can be made when the circumstances warrant it. In *Seale*, for example, where attorneys sought to recover $43,715.52 in outstanding attorney's fees based on an oral agreement for representation, the appellate court affirmed a trial court judgment awarding $30,000, finding that to be the amount of reasonable attorney's fees incurred. *Id.*, 19-1487, p. 12, 310 So.3d at 204. The award was based on the fact that the "[domestic] case was very complicated and took a significant amount of time to complete involving multiple court appearances" and that "the ex-husband was very contentious, which required the filing of several rules for contempt." *Id.*

In *Drury v. Fawer*, 590 So.2d 808, 811 (La. App. 4 Cir. 1991), this Court found that the attorney "did not carry the burden of proving his entitlement to all of the fees billed." In that case, the attorneys were hired to represent the plaintiff in a criminal matter. The attorneys filed suit to recover outstanding attorney's fees of $68,133.75, but were ultimately awarded $51,023.60. This Court noted that "a great deal of time and effort is generally required to bring a criminal case through trial and to the brink of appellate argument" and that the representation "required research into unique federal criminal issues." *Id.* at 812. Likewise, numerous drafts of briefs were offered into evidence documenting the work performed, and the attorneys represented the plaintiff at a two-day jury trial and wrote an appellate brief, as well as several motions. Notably, however, this Court cited, with approval, the trial court's finding that "'the time slips submitted in support of the claim for attorney fees contain errors; are not always complete and contain skimpy

14

information at best; and *many were actually reconstructed after the date the work was reportedly done*.'" *Id*. at 811. (Emphasis added).

Similarly, in *Hebert v. Calahan*, 02-1237 (La. App. 3 Cir. 3/5/03), 839 So.2d 1156, an attorney claimed to have spent 100 hours on his client's claim to recover amounts allegedly overpaid to attorneys representing him in another matter. In connection with the representation, the attorney retained $12,000 of the sums he recovered for his client. The Court noted that the attorney "could only reconstruct 81 of those hours and did so without the minute detail normally associated with billing." *Id*., 02-1237, p. 5, 839 So.2d at 1159. Noting that the matter was not complicated, the trial court "found that [the attorney] most likely expended only five hours researching and drafting the demand letter." *Id*. The Third Circuit agreed and affirmed an award of $1,000 to the attorney.

In the instant matter, and considering the factors set forth by the *Bd. of Sup'rs* case, we find that the attorney's fees charged in this case were excessive with respect to the time associated solely with reviewing documents. The factors weighing heavily against a finding that the award was reasonable include: the ultimate result obtained (a dismissal of the legal malpractice case, where Mr. Jenkins failed to appear for the hearing); the extent and character of the work performed (only one pleading prepared for Mr. Lewis); the number of appearances made (none); the intricacies of the facts involved (whether the former attorney failed to timely file a lawsuit for Mr. Lewis); and the diligence of counsel (Mr. Jenkins demonstrated little value for the work performed). We find the other factors to be neutral; that is, they neither weigh in favor of, nor against, the reasonableness of the attorney's fees in this case.

We further find that the lack of any supporting contemporaneous documentation, notations, or billings kept in the course of business resulted in the recreation of an accounting more than a year after the time was spent. We find that the accounting is not reliable and the billings reflected therein for the review of documents is unreasonable.

Based on the foregoing, we reduce the number of hours spent on document review by half. In our view, the reasonable amount of time for such work would be no more than 35 hours. Mr. Jenkins' accounting reflects 70 hours for this work, which, at a rate of $450 per hour, amounts to $31,500. As we have found that 35 hours is the maximum reasonable amount of time for document review, Mr. Lewis is entitled to reimbursement for half of the amount billed on the accounting for the review of documents, or the sum of $15,750.

We further note that Mr. Lewis' accounting reflects charges for 96 hours of work, which at $450 an hour, amounts to $43,200. According to the cashier's checks submitted at trial, Mr. Lewis paid $47,000 to Mr. Jenkins, an overpayment of $3,800, for which he is entitled to reimbursement.[7]

**CONCLUSION**

Based on the foregoing, we find that the trial court erred in dismissing Mr. Lewis' lawsuit and we reverse the trial court's judgment. In light of the record reviewed in its entirety, we hereby render judgment in Mr. Lewis' favor for the sum of $19,550. This sum represents a reimbursement of $3,800, the sum by which Mr. Jenkins was overpaid, and an additional $15,750, representing the

---

[7] In his Petition, Mr. Lewis stated that he paid $46,000 to Mr. Jenkins. The cashier's checks, however, reflect that he paid $47,000.

16

reimbursement of fees for which Mr. Jenkins unreasonably charged for document review.

**REVERSED AND RENDERED**